# EXHIBIT "A"

CAUSE No. 429-03494-2013

| | |
|---|---|
| LESLIE C. LASSBERG<br>    a/k/a CLARE LASSBERG,<br><br>                    Plaintiff,<br><br>vs<br><br>BARRETT DAFFIN FRAPPIER TURNER &<br>    ENGEL, L.L.P., in its capacity as an agent and<br>    alleged Substitute Trustee for BANK OF<br>    AMERICA, N.A., as successor by merger to<br>    BAC HOME LOANS SERVICING, LP, in its<br>    capacity as agent and servicer for<br>WELLS FARGO BANK, N.A., as trustee for the<br>    Certificate holders of MORGAN STANLEY<br>    ABS CAPITAL I INC. TRUST 2005-WMC3,<br>    MORTGAGE PASS-THROUGH<br>    CERTIFICATES, SERIES 2005-WMC3;<br>STONEBROOK  ESTATES HOMEOWNERS<br>    ASSOCIATION, INC.; CHARLES A. WARD;<br>MERSCORP HOLDINGS, INC.; MORTGAGE<br>    ELECTRONIC REGISTRATION SYSTEMS,<br>    INC. ("MERS"), as nominee for<br>WMC MORTGAGE CORPORATION and its<br>    Successors and Assigns; and the Successors and<br>    Assigns of MERS;<br>JPMORGAN CHASE BANK, N.A., as trustee<br>    on behalf of the Holders of the TRUMAN<br>CAPITAL MORTGAGE LOAN TRUST 2004-2;<br>JPMORGAN CHASE BANK, N.A. F/K/A<br>    CHASE MANHATTAN BANK, as Trustee of<br>    IMC HOME EQUITY LOAN TRUST 1997-6<br>    UNDER THE POOLING AND SERVICING<br>    AGREEMENT DATED AS OF OCTOBER 1,<br>    1997; JOHN & JANE DOES 1-50, TRUSTS 1-<br>    50, CORPORATIONS 1-50, as unknown<br>    Claimants of 7113 STONERIDGE DRIVE,<br>    FRISCO, TEXAS 75034,<br><br>                    Defendants-Claimants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br><br><br><br><br><br><br><br>429  JUDICIAL DISTRICT<br><br><br><br><br><br><br><br><br><br>COLLIN COUNTY, TEXAS<br><br><br><br><br><br><br><br>JURY TRIAL DEMAND |



**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 1

## PLAINTIFF'S ORIGINAL PETITION AND
## APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION
## REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL

TO THE HONORABLE JUDGE:

COMES NOW, LESLIE C. LASSBERG a/k/a CLARE LASSBERG (hereinafter

"Plaintiff") in the above-styled cause of action and files this her Original Petition and

Application for an Emergency Temporary Injunction and Demand for Jury Trial for

quiet title and declaratory judgment; and for claims of invasion of privacy, fraudulent

concealment, fraudulent misrepresentation, violations of the Texas Deceptive Trade Practices

Act (hereinafter "DTPA"), the Texas Civil Practice and Remedies Code §12.002, the Texas

Property Code and the Texas Local Government Code §192.007, jointly and severally, against

Defendants, BARRETT DAFFIN FRAPPIER TURNER & ENGEL, L.L.P. in its capacity as an

agent and alleged Substitute Trustee for BANK OF AMERICA, N.A., as successor by merger to

BAC HOME LOANS SERVICING, LP, in its capacity as agent and servicer for WELLS

FARGO BANK, N.A. as Trustee for the CERTIFICATE HOLDERS of MORGAN STANLEY

ABS CAPITAL I INC. TRUST 2005-WMC3, MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2005-WMC3; STONEBROOK ESTATES HOMEOWNERS

ASSOCIATION, INC.; CHARLES A. WARD; MORTGAGE ELECTRONIC REGISTRATION

SYSTEMS, INC. ("MERS") as nominee for WMC MORTGAGE CORPORATION and its

Successors and Assigns; and the Successors and Assigns of MERS; and its parent company,

MERSCORP HOLDINGS, INC.; JPMORGAN CHASE BANK, N.A. as Trustee on behalf of

the HOLDERS of the TRUMAN CAPITAL MORTGAGE LOAN TRUST 2004-2;

JPMORGAN CHASE BANK, N.A. F/K/A CHASE MANHATTAN BANK, as Trustee of IMC

HOME EQUITY LOAN TRUST 1997-6 UNDER THE POOLING AND SERVICING

AGREEMENT DATED AS OF OCTOBER 1, 1997; JOHN & JANE DOES 1-50, TRUSTS 1-50 and CORPORATIONS 1-50 as unknown claimants-in-interest of 7113 STONERIDGE DRIVE, FRISCO, TEXAS 75034; and through this verified complaint, respectfully states to this Court:

## I.  DISCOVERY CONTROL PLAN

1.      Plaintiff intends to conduct discovery under Level 2 of the Texas Rules of Civil Procedure. Rule 190.3, T.R.C.P.

## II.  PLAINTIFF'S REQUEST FOR DISCLOSURE

2.      Pursuant to Texas Rule of Civil Procedure 194, the Defendants are hereby requested to disclose, within fifty (50) days after service of this request, the information or material described in Texas Rule of Civil Procedure 194.2 (a) – (l).

## III.  PARTIES

3.      Plaintiff, **LESLIE C. LASSBERG** is a Texas citizen and Land Owner of her residential homestead real property located in Collin County, Texas at 7113 Stoneridge Drive, Frisco, Texas 75034.

4.      Defendant **CHARLES A. WARD** is a Texas citizen and resident of Tarrant County, Texas who resides at 1605 Dale Drive, Arlington, Texas 76010.

5.      Defendant **STONEBROOK ESTATES HOMEOWNERS ASSOCIATION, INC.** is a non-profit Texas Corporation.  It may be served with process through its registered agent, Robert M. Blend, at 5301 Spring Valley Road, Suite 200, Dallas, Texas 75254-2484.

6.      Defendant **BARRETT DAFFIN FRAPPIER TURNER & ENGEL, L.L.P.**

(hereinafter "BARRETT DAFFIN") is a for-profit limited liability partnership that conducts business as a law firm within the State of Texas. It may be served with process through its member, Mary A. Daffin, at 15000 Surveyor Boulevard, Suite 100, Addison, Texas 75001.

7.      Defendant **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION** (hereinafter "CHASE") is a corporation that conducts business in Texas as a financial institution and has headquarters in the State of New York and appears to be acting as a Trustee for two trust entities involved in this proceeding. This Defendant may be served with process through its registered agent CT Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

8.      Defendant **WELLS FARGO BANK, N.A.** as Trustee for the CERTIFICATE-HOLDERS of MORGAN STANLEY ABS CAPITAL I INC. TRUST 2005-WMC3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-WMC3 is a national banking association, who may be served with process through its registered agent Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

9.      Defendant **MERSCORP HOLDINGS, INC.** (fka MERSCORP, INC.; hereinafter "MERSCORP") is the parent company of MERS and is a Delaware corporation with its principal place of business in Reston, Virginia. This corporation is a for-profit entity that filed a Certificate of Merger on February 22, 2012, changing its name to the presently-listed name from its old name, MERSCORP, Inc., which came into fruition on January 1, 1999. It can be served with process through its registered agent Corporation Trust Company, at 1209 Orange Street, Wilmington, Delaware 19801.

10.      Defendant **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 4**

("MERS") as Nominee for WMC MORTGAGE CORPORATION and its Successors and Assigns; and the Successors and Assigns of MERS is a bankruptcy-remote entity that is a wholly-owned subsidiary of Defendant MERSCORP and is also a Delaware corporation, and its principal place of business is also in Reston, Virginia. This entity was first created in 1995 and has since been dissolved; re-incorporated and dissolved a second time; and then re-incorporated again on January 1, 1999 at the same time its parent MERSCORP, Inc. (now MERSCORP Holdings, Inc. as heretofore listed) came into fruition. It is being sued as a Defendant purely for notice as a "nominee" only for any entities that are members of MERSCORP (and NOT MERS) that utilize the MERSCORP business model based on the 2009 MERSCORP Rules of Membership. It can be served with process through its registered agent Corporation Trust Company, at 1209 Orange Street, Wilmington, Delaware 19801.

11.     Defendant **BANK OF AMERICA, N.A.**, as successor by merger to BAC HOME LOANS SERVICING, LP is a national banking association that is headquartered in Charlotte, North Carolina and is licensed to do business in the State of Texas. This entity purports to be the Servicer for WELLS FARGO BANK, N.A. as Trustee for the CERTIFICATE HOLDERS of MORGAN STANLEY ABS CAPITAL I INC. TRUST 2005-WMC3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-WMC3.  This Defendant may be served with process through its registered agent at CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

12.     Defendants   **JOHN   &   JANE   DOES   1-50,   TRUSTS   1-50**   and **CORPORATIONS 1-50** as unknown claimants of 7113 Stoneridge Drive, Frisco, Texas 75034 ("Property") are unknown entities that may consist of individuals, creditors, investors, purchasers of collateralized debt obligations allegedly conveyed into special purpose vehicles, and foreign

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 5

trusts and corporations that may conduct business within or without the State Texas. These Defendants must be served with publication to notice them to come forward and prove their claims and interests before this Court or be forever barred from making such claims post-decree, for which the Plaintiff herein request an immediate order for publication to serve those parties with process.

13.     Defendant **7113 STONERIDGE DRIVE, FRISCO, TEXAS 75034** (hereinafter "Property") is the subject of this quasi in rem action in equity, which must be entered as a Defendant for the purposes of direct (in rem) control by this Court. Any and all potential claimants (including publication to this Defendant Property), including the unknown Successors and Assigns of MERS (as defined herein) must also be noticed by publication as directed by this Court. This proceeding pertains to homesteaded real property and improvements situated in Collin County, Texas, the primary residence of the Plaintiff, more specifically described by legal description, to wit:

> **LOT 8, BLOCK 5, STONEBROOK ESTATES, AN ADDITION TO THE CITY OF FRISCO, COLLIN COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME I, PAGE 329, MAP RECORDS, COLLIN COUNTY, TEXAS.**

### IV. JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this case because the amount in controversy is within the jurisdictional limits of the Court. Venue is proper in Collin County because all or a substantial part of the events and circumstances giving rise to this cause of action occurred in Collin County, Texas. Furthermore, this case pertains to real property that is situated in Collin County, Texas, not on federal land.

15.     Further, this Court also has jurisdiction without diversity because three of the

defendants are within the State of Texas and in close proximity to this Court.

## V. CONDITIONS PRECEDENT

16. All conditions precedent to the Plaintiff maintaining this lawsuit have been accrued, occurred, or been waived.

## VI. GENERAL ALLEGATIONS

17. This proceeding and its related controversy surrounds the chain of title to the Property from August 7, 1997 to the present day, covering a span of over 16 years.

18. The Plaintiff herein claims that she is the owner of this Property in fee simple title with full rights to title vested in her, the same basis as being sufficient to prove her legal and equitable interests in the Property as was cited in *Mortgage Electronic Registration Systems, Inc. v. Nancy Groves*, No. 14-10-00090-CV; 14th DCA, Houston (April 12, 2011).

19. Further, the Plaintiff maintains that she is lawfully seised of the estate with the right to convey a lien interest in the Property to a lender (the now defunct-WMC Mortgage Corporation) and that it is her contractual right to defend title generally on behalf of herself and those entities and persons to whom she has granted at interest, subject to encumbrances of record. The Plaintiff contends that she is contractually bound by these rights and that any denial of those rights by any claimants, known or unknown, would create a breach of her contract.

## A. DERAIGNMENT OF TITLE

20. A Warranty Deed with Vendor's Lien in favor of Alternative Capital Group, Inc. (now defunct) was recorded in the real property records in the office of the Clerk of Collin County, Texas on August 13, 1997 at 2:53 p.m. as Instrument #97-0066591, a copy of which is attached as Exhibit 1 and is incorporated herein by reference. The deed appears to have conveyed the Property from Continental Homes of Dallas, L.P., as Grantor, to Charles A. Ward,

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL** Page 7

a married person, as Grantee.

21.     There appears to be no physically recorded proof of a Limited Power of Attorney in the real property records of Collin County or Dallas County (Texas) that would validate what right or authority was vested in CHTEX of Dallas, Inc., General Partner to act on behalf of Continental Homes of Dallas, L.P. (also now defunct) as its attorney-in-fact, to be able to legally convey the Property to Charles A. Ward (hereinafter "Ward").

22.     · Subsequent to the recordation of the Warranty Deed with Vendor's Lien as described in Paragraph 20 of this Complaint, a Deed of Trust was then recorded in the real property records in the office of the Clerk of Collin County, Texas on August 13, 1997 at 2:53 p.m. as Instrument #97-0066592. In this Deed of Trust, Ward conveyed an interest to Alternative Capital Group, Inc., who would later attempt to transfer the deed and note to IMC Mortgage Company, a Florida corporation, now believed to be defunct. A copy of this Deed of Trust is attached hereto as Exhibit 2 and is incorporated herein by reference.

23. Further, in this Deed of Trust, Defendant Ward also covenanted that he would defend title to the Property; thus, his inclusion into this proceeding. As this Deed of Trust is one of the subjects of controversy within his tenure in the chain of title, at issue is whether or not Ward conveyed clear title to the Plaintiff, what the title company involved in the conveyance knew or should have known about whether the real parties in interest were paid or whether the outstanding sums allegedly paid in full were released properly by the proper party. It is the Plaintiff's belief that there are fraudulently concealed issues which will manifest themselves in this litigation and create issues with the Plaintiff's chain of title.

24.     Also of concern is why Defendant Ward's wife was involved with the signing of

the previous document, referenced as Exhibit 2, supra. Subsequent to the previous recordation, which contained her name and signature as well as that of Charles Ward, Melissa Gay Ward, not a defendant in these proceedings, quit claimed her interest in the Property to Charles Ward following the recordation of Exhibit 2. The quit claim deed was recorded in the real property records in the office of the Clerk of Collin County, Texas on August 13, 1997 at 2:53 p.m. as Instrument #97-0066593, a copy of which is attached hereto as Exhibit 3 and is incorporated herein by reference.

25.    The Plaintiff contends and alleges that even though only Charles Ward signed the promissory note, Melissa Gay Ward also signed before a notary, agreeing to abide by the covenants in the deed of trust, one of which is that she was lawfully seised of the estate. The Plaintiff contends and alleges that the quit claim deed disseised Melissa Gay Ward from the estate, thus creating issues relative to breach of contract.

26.    On August 22, 1998, Lisa Alfonso, who claimed to be a Vice President of Alternative Capital Group, Inc., executed an assignment before witnesses transferring ownership interest in the Ward deed of trust and note to IMC Mortgage Company, a Florida corporation who the Plaintiff believes is no longer in business. This assignment was recorded in the real property records in the office of the Clerk of Collin County, Texas on March 29, 1999 at 2:25 p.m. as Instrument #99-0037110, a copy of which is attached hereto as Exhibit 4 and incorporated herein by reference.

27.    The foregoing Exhibit (4) is significant as the date of the assignment relates to future assignments presented in this Complaint. On April 20, 1999, IMC's purported Vice President, Timothy W. Griffin, by and through the law firm of Brown & Shapiro, L.L.P. in Houston, Texas, appointed a substitute trustee, alleging default on the note; thus, initiating

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 9

foreclosure.  A copy of this Appointment is attached hereto as Exhibit 5 and incorporated herein by reference.

28.     It should be noted that Charles Ward used his credit to purchase the Property using funds provided by the Plaintiff, who continued to make the payments until an alleged default occurred.  The Plaintiff was then able to obtain a loan on the Property and continued making payments on it thereafter.

29.     The information contained in Paragraph 28 of this Complaint is significant here because on May 4, 2000, Charles Ward issued a Warranty Deed with Vendor's Lien to the Plaintiff, pursuant to a divorce, thus disseising himself from the estate under which he held the note as a continuing obligation, creating a breach of the deed of trust he signed two years earlier. It is believed that Ward did this at the direction of a Collin County law firm.  Said deed was recorded in the real property records in the office of the Clerk of Collin County, Texas on May 24, 2000 at 1:58 p.m. as Instrument #2000-0045824, a copy of which is attached hereto as Exhibit 6 and incorporated herein by reference.

30.     At about that same time, Defendant Stonebrook Estates Homeowners Association, Inc. (hereinafter "SEHA") caused to be recorded a Notice of Lien, filed for record in the real property records in the office of the Collin County, Clerk on August 5, 2002 at 8:44 a.m. as Instrument #2002-0110162 in the amount of $1,493.61 for unpaid homeowners association assessments it claimed were due and owing and remained unpaid.  A copy of this Notice is attached as Exhibit 7 hereto and incorporated herein by reference.  Currently, SEHA is a known claimant and defendant in this proceeding.

31.     Subsequent to the SEHA lien, SEHA then caused to be filed Notice of Lis

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 10

Pendens pertaining to an action SEHA commenced in the 401st Judicial District Court of Collin County, Texas, styled, *"Stonebrook Estates Homeowners Association, Inc. v. Claire Lassberg and Charles A. Ward"*, Cause No. 401-2318-02, a copy of which was recorded in the real property records in the office of the Collin County Clerk on December 3, 2002 as Instrument #2002-0177554, a copy of which is attached hereto as Exhibit 8 and incorporated herein by reference.

32.     Also on December 3, 2002, IMC Mortgage Company, who claimed to hold the Ward deed of trust and note, attempted to assign them to JPMorgan Chase Bank f/k/a Chase Manhattan Bank, as Trustee of IMC Home Equity Loan Trust 1997-6 under the Pooling and Servicing Agreement (hereinafter "PSA") dated as of October 1, 1997.  The document was signed by "Jeff Stephan", the same "Jeffrey Stephan" who appears to be employed by GMAC Mortgage LLC in Montgomery County, Pennsylvania, who has been the subject of repeated depositions wherein he admitted he signs 10,000+ documents a day without having personal knowledge of the contents therein.

33.     It is significant to note that Stephan is signing this Assignment of Note and Deed of Trust as a "Document Control Officer" for IMC Mortgage Company, when in fact there is no recorded power of attorney that gives Stephan any authority, through attorney-in-fact status or otherwise, that would allow him to execute documents on behalf of IMC.  A copy of this Assignment, filed in the real property records in the office of the Collin County Clerk as Instrument #2002-0178001, is attached hereto as Exhibit 9 and incorporated herein by reference.

34.     Further, it is also significant to note that the Assignment previously referred to in the preceding paragraph (Exhibit 9) was backdated to July 23, 2002 when it was executed on

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 11

November 4, 2002. In either case, whether backdated or not, the Plaintiff maintains that the attempted conveyance into the trust was invalid because the transfer did not comport to the terms and regulations promulgated by the PSA and is thus non-compliant and in violation of New York Trust Law §7-2.4 and is therefore void. This is not the only time that non-compliance with the PSA occurs in this chain of title. The Plaintiff maintains that it happened multiple times, and at least one of which occurred through fraudulent concealment of the parties attempting the transfer.

35.    Furthermore, there is no apparent nexus between IMC Mortgage Company (hereinafter "IMC"), GMAC Mortgage LLC (hereinafter "GMAC") and the trust being administrated by JPMorgan Chase (hereinafter "Chase") to explain how Stephan managed to "control" this document. What is even more suspicious is the fact that IMC would attempt to convey an allegedly defaulted and non-performing loan into a trust pool that was allegedly distributing proceeds to investors. This issue was pointed out several times in cases heard before Kings County, New York Judge Arthur Schack, who repeatedly posed the same questions to the claimants, their counsel and their respective trust entities.

36.    On November 30, 2004, at the insistence of American Title Company, the Plaintiff deeded one half of her undivided interest in the Property to Defendant Ward in the form of a Special Warranty Deed, recorded in the real property records in the office of the Clerk of Collin County, Texas on December 6, 2004 at 2:53 p.m. as Instrument #2004-0173935, a copy of which is attached hereto as Exhibit 10 and incorporated herein by reference.

37.    The Plaintiff claims that she was led to believe (by the title company) that her proposed home loan, which she was able to obtain, would not have been able to close unless it was in the name of Defendant Ward, since the deed of trust and note securing the Property were

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 12

in his name at that time. Subsequently, the Plaintiff was required to convey all of her interest back to Defendant Ward via a Warranty Deed which the Plaintiff executed on December 27, 2004, which was then recorded in the office of the Clerk of Collin County, Texas on December 30, 2004 at 10:27 a.m. as Instrument #2004-0185329, a copy of which is attached hereto as Exhibit 11 and incorporated herein by reference. At this juncture of the deraignment, the Plaintiff claims that she had vested equity in the Property, but would have to wait until closing to have the Property deeded back into her name.

38.      On December 30, 2004, a Warranty Deed with Vendor's Lien was executed by Charles A. Ward to Leslie Lassberg in favor of a deed of trust and note in the amount of $137,600.00 to WMC Mortgage Corporation, which the Plaintiff has reason to believe is defunct. This deed was recorded in the real property records of the office of the Clerk of Collin County, Texas on December 30, 2004 at 10:27 a.m. as Instrument #2004-0185330, in immediate sequence with the previous document. A copy of this warranty deed is attached hereto as Exhibit 12 and incorporated herein by reference.

39.      Subsequent to the filing of the foregoing deed (Exhibit 12) as referenced in the previous paragraph, the Plaintiff executed a first and second deed of trust and note in favor of WMC Mortgage Corporation, dated December 22, 2004, which were then consecutively recorded in the real property records in the office of the Collin County Clerk on December 30, 2004 at 10:27 a.m. as Instrument numbers #2004-0185331 and #2004-0185332, respectively, a copy of each are attached as Exhibit 13 and Exhibit 14, respectively, and incorporated herein by reference. By and through these two loans, the Plaintiff assumed that she would be able to pay off the former owner's deed of trust and note, as well as the SEHA lien filed against the

Property. Defendant MERS is named in both of these documents as a nominee for WMC Mortgage Corporation. The issues in controversy surrounding MERS and its parent company, MERSCORP Holdings, Inc. are further discussed herein below.

40.    Subsequent to the funding of the Plaintiff's loans, SHEA filed a Notice of Payment and Notice of Release of Lis Pendens, having resolved its delinquent assessment issues and litigation, both of which were then recorded on January 5, 2005 in the office of the Clerk of Collin County, Texas at 1:26 p.m., in sequence with each other as Instruments #2005-0001871 and #2005-0001872, copies of which are attached hereto as Exhibits 15 and 16, respectively, and incorporated herein by reference.

41.    A month after SHEA released its lien and lis pendens, IMC again attempted to convey the Ward deed and note into another trust entity using an Assignment of Security Instrument dated August 14, 1997. This assignment was recorded in the office of the Clerk of Collin County, Texas on February 8, 2005 at 2:17 p.m. as Instrument #2005-0016721, a copy of which is attached hereto as Exhibit 17 and incorporated herein by reference. Following the recordation of this document, it appears it was returned to Alta Real Estate Service, Inc. who appears to have attempted to effectuate a Release of Lien immediately following the recordation of this document,

42.    The Plaintiff contends and alleges that this assignment was executed on August 14, 1997 by Tim Griffin of IMC Mortgage Company; however, Exhibit #4 of this Complaint demonstrates that the assignment by Alternative Capital Group, Inc. to IMC Mortgage Company was executed on August 22, 1998; thus, IMC attempted to convey the deed and note into the trust **A YEAR BEFORE** it had been assigned the note by Alternative Capital Group, Inc.

43.     Furthermore, IMC conveyed the deed and note into the trust AFTER the closing date of the trust, which would again render the transaction void because of non-compliance with the PSA and in contravention of New York Trust Law Section 7-2.4.

44.     As a result of this invalid and improper conveyance, the Plaintiff claims that Defendant JPMORGAN CHASE BANK, N.A. as Trustee on behalf of the HOLDERS of the TRUMAN CAPITAL MORTGAGE LOAN TRUST 2004-2 did not own the deed and note that its alleged agents attempted to release the lien on in the document immediately recorded after it attempted the assignment. The Release was recorded in the office of the Clerk of Collin County, Texas on February 8, 2005 at 2:17 p.m. as Instrument #2005-0016722. A copy of the Release of Lien is attached hereto as Exhibit 18 and incorporated herein by reference.

45.     In regard to Exhibit 18, the Plaintiff maintains that after a diligent search of the land records in Duval County, Florida, where this alleged Release occurred, it could find no Limited Power of Attorney in the real property records wherein Defendant JPMORGAN CHASE BANK, N.A. as Trustee on behalf of the HOLDERS of the TRUMAN CAPITAL MORTGAGE LOAN TRUST 2004-2 named Select Portfolio Servicing, Inc. (hereinafter "SPS") as its attorney-in-fact; thus, since it appears that JPMorgan's offices are located in Duval County, Florida, that JPMorgan Chase and its agents fraudulently concealed and misrepresented the fact that SPS did not have the lawful authority to release the Ward note and deed of trust because: (1) the trust did not legally own the note and deed of trust when it attempted to release the Ward deed of trust and note; and (2) the agent claiming to be attorney-in-fact knew it did not have legal authority to release the lien, yet did so anyway through agents of Defendant Chase or someone directed by Chase who is a known MERSCORP member.

46.     The Plaintiff claims that the spate of fraudulent assignments and releases has

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 15

clouded the title to her Property and have thus impaired its vendibility, disparaging the chain of title and diminishing the Property's value to the point where no reasonable person would be willing to purchase the Property (not even at a Trustee's Sale) knowing the implications of defects on title in an attempt to assist any proven real party in interest to mitigate its damages.

47. On May 30, 2007, in consort with the law firm known then as Barrett, Burke, Wilson, Castle, Daffin & Frappier, L.L.P., now known and referred to herein as Barrett-Daffin, Defendant Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP, attempted to appoint agents of Barrett-Daffin as Substitute Trustees when there was no formal assignment giving the real party in interest (who Bank of America, N.A. claims to have the authority as Servicer to appoint anyone as a substitute trustee) the rights under the deed of trust to appoint a substitute trustee. In the deeds of trust the Plaintiff signed, the right to substitute a trustee(s) is reserved solely to the Lender, NOT the Servicer and NOT MERS and its agents. This Appointment, devoid of any assignments precedent giving it any validity and constructive notice to the world, was recorded in the real property records in the office of the Clerk of Collin County, Texas on May 30, 2007 at 1:53:15 p.m. as Instrument #2007-0530000724950, a copy of which is attached as Exhibit 19 and incorporated herein by reference.

48. Further, the Plaintiff contends and alleges that the signor of this document, **Ely Harless**, who purports to be a Vice President of Defendant WELLS FARGO BANK, N.A. as Trustee for the CERTIFICATE HOLDERS of MORGAN STANLEY ABS CAPITAL I INC. TRUST 2005-WMC3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-WMC3, who executed this document on April 24, 2007, was acting as a signor that the Plaintiff maintains and alleges had no personal knowledge of the contents of the document he was

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**             Page 16

affixing his signature to, but also was acting under the authority of someone other than the trust he claimed to be representing and not as a "Vice President" of any entity with real authority. It is a known fact that Cambridge Place Investment Management, Inc., which appears to be a fund manager for numerous investment groups, filed suit against Morgan Stanley ABS Capital I Inc. and named the foregoing trust as referenced in this Paragraph, to recover damages incurred as a result of Morgan Stanley's offers to purchase securities, including the foregoing trust certificates, "by means of untrue statements of material or omissions of material facts in violation of Mass. General Laws Ch. 110A § 410 (the Massachusetts Securities Act)." Cause No. 10-2741, Suffolk County Superior Court, Commonwealth of Massachusetts, filed July 9, 2010.

49.    The referenced alleged authority of Mr. Harless has been challenged in numerous cases involving foreclosure issues in the Southern District of New York as cited herein below:

> *Mortgage Elec. Registration Sys., Inc. v Folkes* 2008 NY Slip Op 50365(U) [18 Misc 3d 1138(A)] Decided on February 5, 2008 Supreme Court, New York County Payne, J. Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. In this case, Judge Payne ruled:

> In support of its motion, plaintiff submits the affidavit of **Ely Harless**, who is identified as a "Vice President of Countrywide Loans, the successor-in-interest to the plaintiff, Mortgage Electronic Registration Inc., as Nominee for America's Wholesale Lender." As to Folkes' alleged default, **Harless** refers only to Schedule E of the complaint for the facts (see Harless Aff., ¶ 4). However, Schedule E is merely a statement of the amount due on the mortgage, and does not state any particular failure by Folkes to make a payment. Here, **plaintiff failed to establish competent evidence of a default, therefore the motion for summary judgment must be denied** (see *Witelson v Jamaica Estates Holding Corp.*, 40 AD3d 284, supra; *North Fork Bank v 163-35 L & M Realty Corp.*, 298 AD2d 444 [2d Dept 2002]).

50.    And in yet another case involving Mr. Harless, as cited hereinbelow:

> *The Bank of New York, AS TRUSTEE FO THE CERTIFICATE-HOLDERS CWALT, INC. ALTERNATIVE LOAN TRUST 2006-OC1 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-OC1,*

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 17**

*Plaintiff, v. Denise Mulligan, Beverly Branche, et al, Defendants,*
Decided August 25, 2010; Judge Arthur J. Schack stated:

Plaintiff's renewed application, upon default of all defendants, for an
order of reference for the premises located at 1591 East 48th Street,
Brooklyn, New York (Block 7846, Lot 14, County of Kings) is
denied with prejudice. The complaint is dismissed. The notice of
pendency filed against the above-named real property is cancelled.
In my June 3, 2008 decision and order in this matter, I granted leave
to plaintiff [BNY] to renew its application for an order of reference
within forty-five (45) days, until July 18, 2008, if it complied with
three conditions. However, plaintiff did not make the instant motion until
May 4, 2009, 335 days after June 3, 2008, and failed to offer any excuse
for its lateness. Therefore, the instant motion is 290, almost ten months, late.
Further, the instant renewed motion failed to present the three affidavits that
this Court ordered Plaintiff BNY to present with its renewed motion
for an order of reference: (1) an affidavit of facts either by an officer of
plaintiff BNY or someone with a valid power of attorney from
plaintiff BNY and personal knowledge of the facts; (2) an affidavit
from **Ely Harless** describing his employment history for the past
three years, because **Mr. Harless** assigned the instant mortgage
as Vice President of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (MERS) and the executed an affidavit of merit for
assignee BNY as Vice President of BNY's alleged attorney-in-fact
without any power of attorney; and, (3) <u>an affidavit from an officer
of plaintiff BNY explaining why it purchased the instant
nonperforming loan from MERS</u>, as nominee for DECISION
ONE MORTGAGE COMPANY, LLC.  Moreover, after I reviewed
the papers filed with this renewed motion for an order of reference
and searched the Automated City Register Information System (ACRIS)
website of the Office of the City Register, New York City
Department of Finance, I discovered that Plaintiff BNY lacked
standing to pursue the instant action for numerous reasons.
**Therefore, the instant action is dismissed with prejudice.**

51. And yet, in another significant trust case before Judge Shack, Mr. Harless's authority

was again challenged, as cited hereinbelow, in part:

At an IAS Term, Part 27 of the Supreme Court of the State of New York,
held in and for the County of Kings, at the Courthouse, at Civic Center,
Brooklyn, New York, on the 7th day of July 2008; Schack, J.

*DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE
FOR MORGAN STANLEY MORTGAGE PASS THROUGH*

**PLAINTIFF'S ORIGINAL PETITION AND
APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION
REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 18

*CERTIFICATES: c/o COUNTRYWIDE HOME LOANS, INC.,*
*SIMI VALLEY, CA 93065 STANLEY HOME EQUITY TRUST 2007-2*
*SERIES 2007-2 400 COUNTRYWIDE WAY, Plaintiff versus*
*JEANETTE AUGUSTE and HELEN M. AUGUSTE, Defendants.*
Plaintiffs moving papers for an order of reference and related relief fails
to present an "affidavit made by the party," pursuant to CPLR 3215(f).

The instant application contains an "affidavit of merit and amount due"
by **Ely Harless**, "Vice President of COUNTRYWIDE HOME LOANS,
Attorney in fact for DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR MORGAN STANLEY HOME
EQUITY TRUST 2007-2 MORTGAGE PASS THROUGH
CERTIFICATES; SERIES 2007-2.

Attached to his affidavit of merit is a "Limited Power of Attorney,"
dated June 17, 2005, from DEUTSCHE BANK appointing
"Countrywide Home Loans Inc." as its attorney-in-fact to perform
various enumerated services, "in connection with all mortgage loans
serviced by the Servicer [Countrywide Home Loans, Inc.] pursuant
to the Agreements solely for the purpose of performing such acts
and executing such documents in the name of the Trustee
[DEUTSCHE BANK] .', Preparing foreclosure documents are listed.

However, the Agreements referred to are twenty-four collateralized
debt obligations (CDO's), listed on exhibit A attached to the Limited
Power of Attorney. The instant foreclosure proceeding for MORGAN
STANLEY HOME EQUITY TRUST 2007-2 MORTGAGE
PASS THROUGH CERTIFICATES; SERIES 2007-2 is not among
the twenty-four listed CDO's in Exhibit A of the Limited Power of
Attorney.

Also, Mr. Harless claims, in T[2] of his affidavit of merit
and amount due, that "a true copy of the Power of Attorney is attached."
The attached copy is an uncertified photocopy. If plaintiff renews its
application for an order of reference, and a power of attorney is
utilized authorizing the affiant to submit his or her affidavit, it
must be an original, a certified copy, or certified by plaintiff's counsel,
pursuant to CPLR 2105.

Also, according to plaintiff's application,
the default of the AUGUSTE defendants began with the nonpayment
of principal and interest due on April 1, 2007. Yet, almost five months
later, on August 20, 2007, plaintiff DEUTSCHE BANK was
willing to take an assignment of the instant nonperforming loan.
The Court wonders why DEUTSCHE BANK would purchase

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 19

a nonperforming loan, almost five months in arrears. Leave is
granted to DEUTSCHE BANK to explain why it purchased a
nonperforming loan.

### Conclusion

Accordingly, it is ORDERED, that the application of plaintiff,
DEUTSCHE BANK NATIONAL TRUST COMPANY AS
TRUSTEE FOR MORGAN STANLEY HOME EQUITY TRUST
2007-2 MORTGAGE PASS THROUGH CERTIFICATES; SERIES
2007-2, for an order of reference and related relief for the premises
located at 4301 Avenue I, Brooklyn, New York (Block 7747 Lot 10,
County of Kings) is denied without prejudice; and it is further
ORDERED, that leave is granted to plaintiff, DEUTSCHE BANK
NATIONAL TRUST COMPANY AS TRUSTEE FOR MORGAN
STANLEY HOME EQUITY TRUST 2007-2 MORTGAGE
PASS THROUGH CERTIFICATES; SERIES 2007-2, to renew
its application for an order of reference and related relief for the
premises located at 4301 Avenue I, Brooklyn, New York (Block 7747,
Lot 10, County of Kings), upon presentation to the Court,
within forty-five (45) days of this decision and order, of its compliance
with the statutory requirements of CPLR 5 32 15 (f), with an affidavit
of facts by either an officer of DEUTSCHE BANK NATIONAL
TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY
HOME EQUITY TRUST 2007-2 MORTGAGE PASS THROUGH
CERTIFICATES; SERIES 2007-2, or someone with a valid power
of attorney from DEUTSCHE BANK NATIONAL TRUST COMPANY
AS TRUSTEE FOR MORGAN STANLEY HOME EQUITY
TRUST 2007-2 MORTGAGE PASS THROUGH CERTIFICATES;
SERIES 2007-2; and an affidavit from an officer of plaintiff
DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE
FOR MORGAN STANLEY HOME EQUITY TRUST 2007-2
MORTGAGE PASS THROUGH CERTIFICATES; SERIES 2007-2
explaining why plaintiff DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR MORGAN STANLEY HOME
EQUITY TRUST 2007-2 MORTGAGE PASS THROUGH
CERTIFICATES; SERIES 2007-2 purchased on August 20, 2007,
a nonperforming loan from MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., as nominee of ACCREDITED HOME LENDERS, INC.

52.     Thus, based on the foregoing court decisions, the Plaintiff believes and maintains

that Mr. Harless was not in the employ of the trust entity he claimed to represent, but rather

associated in some way with the Servicer, Defendant Bank of America, N.A., signing this

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 20**

document under its direction and control.  Currently, the Plaintiff believes and alleges that Mr. Harless may actually be in the employ of Fannie Mae in some capacity (in the Dallas area).

53.     On December 18, 2012, it appears that two assignments purporting to assign both of the Plaintiff's first and second deeds of trust and notes were recorded in the real property records in the office of the Collin County Clerk as Instrument numbers #20121220001623850 and #20121220001623920, respectively; these two assignments are attached hereto as Exhibits 20 and 21, respectively, and are incorporated herein by reference.

54.     Based on the foregoing references in Paragraphs 49-51 of this Complaint, the Plaintiff maintains that if her loans were in default, why then would MERS and Bank of America, N.A., the obvious preparer of both assignments, as Servicer, attempt to transfer non-performing loans into a trust that allegedly is distributing income payments to investors? The Plaintiff believes and alleges that based upon her limited research, that the trust may be using these allegedly defaulted loans to:

(a) write off the Plaintiff's notes as a loss to the trust, for which the trust would be made whole based on the payment from a credit default swap;

(b) write off the Plaintiff's notes in an attempt to avoid capital gains; thus, potentially committing criminal income tax evasion; or

(c) further obfuscating the fact that this trust could not accept the deed and note into the pool because the alleged assignments occurred on December 18, 2012; were filed for record on December 20, 2012, but BOTH assignments missed the cut-off and closing date of the trust by over seven years.

Again, the actions by Bank of America, N.A. appear to be in bad faith, in non-compliance with

**PLAINTIFF'S ORIGINAL PETITION AND
APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION
REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 21

the PSA and in contravention of New York Trust Law at § 7-2.4; thus constituting fraudulent misrepresentation of the real party in interest with the rights to enforce the deed of trust and note.

55.     The Plaintiff further believes that one or more parties were made whole in this transaction as a result of default insurance payments or credit default swap payments to investors, the trustee, the servicer, or all of the above.

56.     On July 18, 2013, Defendant SEHA, by and through its duly authorized agent, filed a Notice of Lien in the real property records in the office of the Clerk of Collin County, Texas at 11:16:22 a.m. as Instrument #20130718001004140. On said notice, the Plaintiff herein is shown as the current owner of the lot. Further, SEHA asserts that it is entitled to post-bankruptcy petition assessments, late charges and collection costs properly levied against the Lot in the amount (as of July 11, 2013), equal to $2,812.46. Thus, the HOA, namely, is asserting its claim against the Property and thus is named as a defendant in this proceeding. The Notice of Lien is attached hereto as Exhibit 22 and incorporated herein by reference.

57.     Further, the Plaintiff contends and alleges that she received a certified letter dated August 8, 2013, return receipt requested, from Defendant Barrett Daffin, who she maintains (inter alia) claims in the letter to:

(1) represent Defendant Bank of America, N.A. as servicer for the trust for which Defendant Wells Fargo Bank, N.A. is acting as trustee;

(2) is claiming that the note has been accelerated and that the current parties claiming an interest in the Property have the right to accelerate the note under Paragraph 22 of the relevant deeds of trust;

(3) names the trust entity 2005-WMC3 as the owner of the note with the right to enforce, when in fact, the non-compliance with the PSA and violation of New York Trust Law

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                     **Page 22**

render the trust's alleged ownership of the Plaintiff's deed and note void;

(4) claims that it is a debt collector, further claiming that it has the authority to sell the Plaintiff's Property at a Trustee's Sale; and

(5) purports to set a sale date of September 3, 2013 in which the Plaintiff maintains Barrett-Daffin intends to unlawfully sell her Property *ultra vires* on behalf of the trust which could not possibly own her deeds and notes due to PSA non-compliance issues.

A true copy of the letter is attached hereto as Exhibit 23, and incorporated herein by reference. A search of the real property records in the office of the Collin County Clerk indicated that when Barrett-Daffin sent the letter to Plaintiff it had no recorded authority to do so.

57 (a).    Further, **[This paragraph is added to the Complaint due to the untimely filing of an Appointment of Substitute Trustee, naming the Barrett-Daffin law firm" as the alleged substitute trustee]** on August 23, 2013 at 10:01:50 a.m., the Plaintiff contends and alleges that Defendant Bank of America, N.A. in collusion with Defendant Barrett Daffin, recorded in the real property records in the office of the Collin County Clerk as Instrument number #20130823001196040, what appears to be a backdated Appointment of Substitute Trustee; which is attached hereto as Exhibit 24, and incorporated herein by reference. This Appointment purports to have been executed in Dallas County, Texas on August 9, 2013 by Kimberly Tetta Sumrall, who claims that she is signing the appointment on behalf of Wells Fargo Bank, N.A. as Trustee for the Certificate holders of Morgan Stanley ABS Capital I Inc. Trust 2005-WMC3, Mortgage Pass-Through Certificates, Series 2005-WMC3 as its attorney-in-fact.

57 (b).    Further, **[This paragraph is also added to the Complaint due to the untimely filing of the Appointment of Substitute Trustee, naming the Barrett-Daffin law**

**firm" as the alleged substitute trustee]** this recorded Appointment of Substitute Trustee appears to be an attempt to correct the apparent ultra vires behavior of Barrett-Daffin in the correspondence sent by it to Plaintiff dated August 8, 2013, but it fails to do so because the Appointment of Substitute Trustee is dated August 9, 2013, and was not recorded until August 23, 2013; whereas the above referenced correspondence that was sent by Barrett-Daffin is dated August 8, 2013. In other words, it appears that the recorded appointment was not sufficiently backdated to pre-date the August 8, 2013 correspondence sent to Plaintiff, and therefore Bank of America, N.A. and Barrett-Daffin have committed violations of the Texas Property Code and the Texas Deceptive Trade Practices Act which the Plaintiff alleges herein as counts against Bank of America, N.A. and Barrett-Daffin, whom the Plaintiff claims and alleges acted in concert to manufacture and file on August 23, 2013 the Appointment of Substitute Trustee.

58.     Further, the Plaintiff maintains and alleges that if the sale of her Property were to go forward, it would be in violation of the 21 day notice required under the Texas Property Code, and *Michael v. Crawford*, 108 Tex. 352, 193 S.W. 1070 (1917)(which requires that a notice of substitute trustee must be filed 21 days prior to the foreclosure sale). Moreover, it is highly likely that the alleged trust will claim itself to be the "high credit bidder" as most of these trusts notably do in similar foreclosure sales, when in fact, the trust could not be the credit bidder because it does not own the note, again due to PSA non-compliance issues. Thus, the Plaintiff maintains and alleges that Defendant Barrett-Daffin, acting as a substitute trustee, based on the appointment as noted in Exhibit #19, supra, or in Exhibit #24, supra is acting ultra vires, in bad faith, and due to its fraudulent misrepresentations to the Plaintiff herein, is in violation of the Texas Property Code and the Texas Deceptive Trade Practices Act and is liable to the Plaintiff for damages.

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 24**

59.     Thus, through the acts, jointly and severally, of certain alleged defendants, the Plaintiff claims that the sale of her Property will unjustly enrich party(ies) who are not entitled to the proceeds of said sale.

## B. GENUINE ISSUES OF MATERIAL FACT

### (1) MERS-Related Issues

60.     The most recent version of MERS began at the same time its parent MERSCORP went into business as a private, for-profit corporation, January 1, 1999.  For all intents and purposes, MERS is a judgment-proof, bankruptcy-remote "shell" that has no assets, liabilities, income, expenses or employees.  MERSCORP on the other hand is almost a $3-billion a year business with roughly 70 employees. At the time of its creation, the parent was known as MERSCORP, Inc.   On February 23, 2012, the new entity became MERSCORP Holdings, Inc. MERSCORP has some 5500 members who pay dues and fees to be members of MERSCORP. It is widely known that MERSCORP was founded by Fannie Mae, Freddie Mac, The Mortgage Bankers Association, The American Land Title Association and most of the major banks and their servicers, including most of the Defendants herein.

61.     The purpose of the MERS® System is for MERSCORP members (who have membership contracts with MERSCORP (to utilize the MERS® System) to access the system in order to input and track the transfers of mortgage loans in the securities markets on Wall Street. All of this, as well as the concerns of the Court in *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90 (N.Y. 2006), as to the intended functions of MERSCORP and its MERS® System, were outlined in detail in that case. As a result of the MERSCORP owned system known as the "MERS System" over 70-million mortgage loans have been entered into that system, and allegedly MERSCORP members systematically track the transfers of notes from assignor to assignee and

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 25**

so forth.

62.     The Defendants MERS and MERSCORP are included in this suit because the term "MERS" is identified on Exhibits #13, #14, #20 and #21, respectively. The Plaintiff believes and alleges that MERSCORP members (in this instance, Bank of America, N.A. and JPMorgan Chase Bank, N.A. who have MERSCORP-binding contracts) allow their own employees to become "Certifying Officers" of MERSCORP through signing agreements. In Exhibits #20 and #21, signing officer "Richard Paz" most likely works for the Servicer, Bank of America, N.A., receives a paycheck from Bank of America, N.A. or one of its subsidiaries (like ReconTrust Company, N.A.). The Plaintiff believes it highly likely that Mr. Paz does NOT work for WMC Mortgage Corporation, the original lender of her deeds of trust and notes. In fact, the Plaintiff is not sure that WMC Mortgage Corporation even still exists.

63.     The Plaintiff also contends and alleges that Mr. Paz's signing agreement is with MERSCORP and NOT MERS. The Plaintiff further contends that Mr. Paz's employer is a member of MERSCORP, authorized to use the MERS® System. The Plaintiff further contends and alleges that these MERSCORP members are supposed to abide by the MERSCORP Rules of Membership, which have been published and updated from time to time, but due to further scrutiny into the MERS® System, most of the earlier documents pertaining to MERSCORP governing rules (June, 2009) were not available to consumers unless they accessed the MERSCORP-owned "MERS website" at www.mersinc.org via the *Wayback Archive*. This is where the deception of "wearing multiple hats" comes into the "scheme of things".

64.     The Plaintiff contends and alleges that, according to the June, 2009 MERSCORP Rules of Membership, in effect during the time of the events herein:

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 26

(a) The MERS® System is owned and operated by MERSCORP (now MERSCORP

Holdings, Inc. (hereinafter "MERSCORP");

(b) The members of this "system" have contracts with MERSCORP and agree to abide

by MERSCORP "rules" but are not bound by them;

(c) When executing "MERS-related documents", the MERSCORP members tell their

employees to "put on the MERS hat" and sign the documents with wanton recklessness

and impunity, even if the MERSCORP member was not at that time, a real party in

interest to the deed of trust and note; thus, if the chain of custody of the note somehow

became obfuscated and convoluted because a MERSCORP member failed to utilize the

MERS® System and did not record their electronic transfer, the party claiming it had the

right to foreclose could simply tell its employee to "put on the MERS hat" and sign the

document as if MERS had complete  control of the borrower's loan all along, when in

fact, MERSCORP and MERS have absolutely NOTHING to do with the borrower's deed

of trust and note;

(d) In fact, the MERS system has been utilized to obfuscate the real party in interest

from the borrowers while denying property recordation systems badly-needed revenue

to operate, saving its MERSCORP-contracted members tens of millions of dollars a year;

(e) In fact, the Rules of Membership for MERSCORP members issued in June of 2009

was the only set of membership rules actually in use through the end of 2012, when these

alleged assignments (Exhibits #20 and #21) took place;

(f) In fact, the MERSCORP Rules of Membership state succinctly that the use of the

term "MERS" is construed to mean "MERSCORP, Inc.", stated in part:

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 27

## RULE 1

## MEMBERSHIP

*Section 1.* MERSCORP, Inc. ("MERS") shall make the services of its
mortgage electronic registration system (the "MERS® System") available to any
member of MERS.

Thus, anyone who has a contract to use the MERS® System, signs a contract with
MERSCORP (not MERS). The term "MERSCORP" or any derivation thereof, is NOT
found on any of the Plaintiff's deeds of trust or assignments in her chain of title.
(g) There are no 2009 "rules" or any other rules thereafter which stipulate that MERS
has members; thus, since MERSCORP is NOT stated in any of the deeds of trust or
assignments in the case at hand, the Plaintiff maintains that these deeds of trust give
"MERS" no authority because the contracts that the members allegedly have with MERS
are actually with MERSCORP and MERSCORP per se is not stated in her deeds of trust
or assignments as being a party to any of those documents but is carefully concealed due
to crafty wordsmithing by MERSCORP;
(h) The Plaintiff further maintains and alleges that MERSCORP does NOT require its
members to comply with the Rules of Membership; thus, MERSCORP members tell
MERSCORP what to do while obfuscating who the "real boss of the note is", thus;
anything that Defendants MERS and MERSCORP wish to argue as to the authority of
its members must be proven that the actions of the MERSCORP member actually
complied with the part of the MERSCORP Rules its member is referring to.

65. The Plaintiff wishes to impress upon this Honorable Court that the relationship

between MERSCORP and MERS as akin to the relationship between a parent and a child. The rights and obligations of the parent are not the same as those of the child and vice versa. A parent and a child are different in the eyes of the law. The issue here is that if MERS means "MERSCORP", then, to extrapolate the silliness of the idea further, the way that MERS would have the Court believe: "MERS is the owner and subsidiary of MERS." This is the "scheme" that is referenced in Paragraph 63 that the Plaintiff believes has been fraudulently concealed from courts all across the United States; a scheme that this Court may see played upon it in due course. The parent and the child in this case are NOT identical as they would seem, as portrayed in previously-argued MERS-related cases in this State.

66.    The documents that the Plaintiff provides as exhibits in this Complaint were taken from the real property records of Collin County, Texas and are NOT self-authenticating. The Plaintiff maintains and alleges that a recorded document is merely a resulting document and its content cannot be proven accurate or legally meaningful except by looking at other documents and facts that aren't in the public records.

67.    As to MERS issues, the Plaintiff herein challenges the rights of MERS as a nominee and beneficiary as to their true intended meaning, based on the findings contained in depositions of MERSCORP officers and in the MERSCORP Rules of Membership itself.

68.    MERS is not a lender.  It admitted in *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking*, 270 Neb 529; 704 NW2d 784 (2005) that it wasn't a lender. Lenders are members of MERSCORP, the parent.  The MERSCORP members are responsible for inputting the information about the transfers of the loans into the MERS electronic database. MERSCORP disclaims its website for accuracy due to the fact that MERSCORP members input the data, which MERSCORP has absolutely no control over. MERSCORP only provides the

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 29**

electronic database as a vehicle for the MERSCORP members to record their assignments and transfers electronically.  The intended use of this system has run afoul of Texas statutes.

69.     MERS's beneficiary status has been successfully challenged in both the States of Washington (*Bain v. Metropolitan Mortgage Group, Inc.*, No. 86206-1, Sup. Ct. Wash., August 16, 2012) and in Oregon (*Niday v. GMAC et al*, CV10020001; CAA147430; and SC S060655 (2013); *Brandrup v. Recontrust Company, NA et al*, Sup. Ct. Ore. SC S060281 (2013), wherein BOTH States decided that MERS does NOT fall under the definition of a beneficiary under both states Deed of Trust Acts.

### (2) Statutory Violations of Texas Local Government Code § 192.007

70.     If the MERSCORP member does not record its assignment in the land records once it (or its predecessor) has established a right to enforce the note, then there is a break in the chain of title, in violation of Texas Local Government Code § 192.007.  True, there may be no statutory damages arising from such a violation; however, the statute is what it is and must be enforced.  If the MERSCORP members choose NOT to follow the MERSCORP rules and act outside of the scope of the MERSCORP rules, then the MERSCORP member does so at its own peril because it cannot fraudulently conceal facts and then misrepresent them in this Court without consequence.

71.     Not recording the assignments as required under statute has become the subject of multiple lawsuits against MERSCORP and its members in Dallas County and Nueces County, Texas, where multiple representative plaintiffs are now coming forward with similar complaints of violations of this statute.  Travis and Williamson Counties have joined the Nueces litigation.

### (3) Non-Compliance with Pooling and Servicing Agreements

**PLAINTIFF'S ORIGINAL PETITION AND
APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION
REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 30**

72.     The Plaintiff contends and alleges that the trusts involved in her case are subject to controlling documents called Pooling and Servicing Agreements (hereinafter "PSAs").  The PSA is a set of rules contained within the 424(b)(5) prospectus that is given to prospective investors who choose to purchase certificates, generally at $1,000 per certificate. These certificates are in the form of non-recourse bonds, which two New York courts have ruled are evidence of debt, not equity.

73.     The Plaintiff further contends and alleges that these PSA's in each instance have:

(a) a cut-off date; for receiving notes into the pool of loans;

(b) a closing date; in which all paperwork and notes must be in the pool;

(c) a distribution date, which is generally 30 days after the closing date, in which the certificateholders begin to receive a distribution of income as it passes through the trust from the borrowers' payments; and

(d) specific regulations that call for assignments into the trust to be recorded in the land records prior to the note being conveyed into the trust pool of loans.

The Plaintiff contends and alleges that **none** of the trusts (claiming to have an interest in her Property throughout the entire deraignment of her title as referenced in Paragraphs 20 – 59 herein) are the real parties in interest because the assignments as evidenced in the deraignment of her title were not recorded and then timely filed with the trust as required under the regulations contained in the PSA, notwithstanding the actual "litmus test" validity of said assignments.

74.     Further, the Plaintiff contends and alleges that the Release of Lien that was listed as part of the deraignment process as identified as Exhibit 18 herein was invalid because the parties executing that release did not have the personal knowledge, capacity or authority to do so;

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 31**

thus, the Plaintiff maintains and alleges that there is no valid evidence of the Ward note being validly released due to non-compliance issues of the PSA. In this instance, it appears that an attempted assignment made previous to the release was made to give Truman Capital Trust some authority to reconvey, when in fact, that trust's cut-off and closing dates were not timely met and there are no indications that past the closing date, the trust could indeed accept the Ward note into the pool prior to releasing the lien (in immediate succession in the chain of title) because the documents involved in such a transfer would serve no purpose if the trust could not accept them.

     75.    Select Portfolio Servicing, Inc. (hereinafter "SPS"), located in Salt Lake City, Utah, and is stated on the Release of Lien as attorney-in-fact for the trust. To further the fraud, the document was notarized in Duval County, Florida (where Chase, the Trustee, is located) and not in Salt Lake City, Utah where SPS is located. The Plaintiff maintains and alleges that a Chase employee was told by his superiors to sign the document instead. Chase knew that there was no previously-recorded Limited Power of Attorney giving SPS any authority and then fraudulently concealed that fact from the title company (closing on the Plaintiff's loan) and all other parties involved in the Ward conveyance to the Plaintiff. Thus, the title company may not have received valid information from Chase or SPS's representatives when it issued lenders and owners policies involving the subsequent loans. As a proximate result of the actions to fraudulently conceal the identity of the individual signing on behalf of SPS, claiming to have attorney-in-fact status when in fact there was none has further brought suspicion as to whether the proper party was paid and whether these issues of fraudulent concealment in the release of lien contributed to the clouding of the chain of title to the Plaintiff's Property.

    **(4) Violation of the Texas Property Code**

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**        **Page 32**

76.     Due to issues arising from this most recent recordation, Defendant Barrett-Daffin failed to give the Plaintiff proper notice because all transfers of the lien were not recorded timely as required by Texas Law prior to acceleration and collection action on the Note. Further, the new recordation as referenced in Paragraphs 57 (a) and (b), supra, still fails on its face to comport to the Texas Property Code as intended by the Texas legislature.

77.     As a proximate result of the actions of the defendants, the Plaintiff believes that her chain of title is convoluted and irretrievably broken; that there are current and now known defects in the chain of title that have impaired its vendibility; that the impaired vendibility was caused by the lenders and servicers who are members of MERSCORP, who now wish to unlawfully take the Property using a law firm that the Plaintiff claims is operating *ultra vires*; that the title company involved in the closing of the Plaintiff's loan paid someone, but that party may not be the real party in interest, thus, anyone buying the Plaintiff's property, not including the Plaintiff herself, may be exposed to double liability from unknown intervening assignees in the MERSCORP system; and that allowing this foreclosure proceeding to move forward would unjustly enrich parties not entitled to the proceeds of the sale.

## VII. FIRST CAUSE OF ACTION
## QUIET TITLE

78.     The Plaintiff re-alleges paragraphs 1-77 as though fully set forth herein.

79.     The true names or capacities, whether individual, corporate, associate, or otherwise, of the Defendants named in this action as John and Jane Does 1-50, Corporations 1-50 and Trusts 1-50 that are unknown to Plaintiff, who sues such Defendants by fictitious names, and Plaintiff will amend this complaint to show their true names and capacities, upon such ascertainment.

**PLAINTIFF'S ORIGINAL PETITION AND
APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION
REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 33**

80.     The Plaintiff claims a right to superior title over all other claimants as set forth herein and contends and alleges to this Court that there are no real claimants in interests that can prove they have standing to foreclose or convert the Property for their own purposes.

81.     The Plaintiff further claims that due to the actions of the defendants, jointly and severally, that her Property is unmarketable and uninsurable and cannot be made marketable again unless this Court quiet's title to the Property to cure all of the alleged defects in the chain of title to this Property.

82.     Therefore, the Plaintiff respectfully prays that this Court determine the validity of the claims to possessory rights and superior interest in the title to the Property and having found none, to issue a decree quieting title to the Plaintiff's Property and vesting title solely in the Plaintiff.

### VIII. SECOND CAUSE OF ACTION
### DECLARATORY RELIEF

83.     Plaintiff re-alleges Paragraphs 1-77 and 79-82 as though fully set forth herein.

84.     The Plaintiff contends and alleges that the lender defendants acting as trustees for special purpose vehicles on Wall Street, either attempted conveyances when they did not in fact own the deed of trust and note they claimed to own, or in the alternative, attempted through the use of the "MERS® System", to obfuscate the fact that the alleged party in interest claiming to own the note (the trusts) did in fact attempt acceptance of non-performing loans into a supposedly performing trust pool, which in fact did not occur due to PSA non-compliance, and further in contravention of New York Trust Law at § 7-2.4, as cited in Paragraphs 49-51 and also in *Ball v. Bank of New York et al*, No. 4:12-CV-00144-NKL, 2012 U.S. Dist. LEXIS 179878; *Glaski v. Bank of America, N.A. et al*, No. F064556, 5th App. Dist. Ca., Super. Ct. No.

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                **Page 34**

09CECG- 03601 (08/08/2013); *HSBC Bank USA, N.A. v. Young*, No. 11-693-AV, No. 10-3034-

LT, Cir. Ct. Washtenaw County, MI (10/16/2012); *HSBC Bank USA, N.A. v. Marra*, 2008 CA

000630 NC, 12th Judicial Cir. Ct., Sarasota, FL; *In Re Saldivar, Saldivar v. JPMorgan Chase*

*Bank, N.A.*, CASE NO: 11-10689, S.D. Tx Bkpr. Ct. (06/05/2013); and *Wells Fargo Bank, N.A.*

*v. Erobobo*, NY Slip Op 50675 (4/29/2013), Kings County, NY., which specifically stated in

part:

> "The assignment of the note and mortgage from Option One rather than from the
> Depositor ABFC violates section 2.01 of the PSA which requires that the Depositor
> Deliver to and deposit the original note, mortgage and assignments to the Trustee.
>
> The assignment of the Defendant's note and mortgage, having not been assigned from
> The Depositor to the Trust, is therefore void as in being in contravention of the PSA.
> The evidence submitted by Defendant that the note was acquired after the closing date
> and that assignment was not made by the Depositor, is sufficient to raise questions of
> fact as to whether the Plaintiff owns the note and mortgage, and precludes granting
> Plaintiff summary judgment."

In all instances regarding the conveyances in question, by IMC and MERS, the notes were not

conveyed to the Depositor (as is required under the PSA) but directly into the trust, years after

the dates that they could no longer have been conveyed into the trust.  The Plaintiff believes and

thus maintains that there are sufficient cases of record that validate her claim that

notwithstanding the assignments per se, the trusts that claim to own the notes and deeds of trust

in fact do not; and therefore this Court must hold an evidentiary hearing to determine the facts

stated herein to be valid and having found it to be so, issue a declaratory ruling that none of the

parties involved in the assignments and conveyances had standing and authority to do so; and

violated the PSA; and contravened New York Trust Law; and as a direct and proximate result of

their actions, this Court must also determine:

> (a) the extent to which the defendants jointly and severally slandered and clouded

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                **Page 35**

the Plaintiff's title to her Property;

(b) the extent of the impairment of vendibility of the Property caused by the actions of the defendants that rendered the Property uninsurable and unmarketable;

(c) that no defendant claimant had the authority to substitute the trustee;

(d) that the alleged substitute trustee fraudulently misrepresented its authority to foreclose and sell the Plaintiff's Property;

(e) that the alleged substitute trustee acted without authority;

(f) that the alleged substitute trustee is in violation of the Texas Deceptive Trade Practices Act;

(g) that the alleged substitute trustee is in violation of the Texas Property Code;

(h) that the MERSCORP members actually ordered their employees to sign documents without having personal knowledge of the contents therein in an attempt to obfuscate the real parties in interest; and

(i) whether or not any of the alleged defendant-claimants actually have a legitimate and provable interest in the Plaintiff's Property;

(j) whether the facts regarding the possession of the Plaintiff's personal identifying information by MERSCORP constitute an invasion of privacy of the Plaintiff;

(k) whether MERSCORP and MERS business model is in violation of the Texas Local Government Code at § 192.007;

and having ascertained the foregoing, to make a declaratory ruling as to each of the foregoing issues and to determine the amount of statutory, compensatory and punitive

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 36**

damages that should be awarded to the Plaintiff from each Defendant, along with reasonable attorney's fees and costs of suit and other relief the court deems just and proper.

### IX. THIRD CAUSE OF ACTION
### FRAUDULENT MISREPRESENTATION IN VIOLATION
### OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### (AGAINST DEFENDANT BARRETT-DAFFIN)

85.     Plaintiff re-alleges Paragraphs 1-77, 79-82 and 84 as though fully set forth herein.

86.     Defendant Barrett-Daffin in fact sent a notice to the Plaintiff, dated August 8, 2013 (*Ex. 23*, supra), claiming that it had the proper and legitimate authority to foreclose and sell her Property. However, the only reference to an Appointment of Substitute Trustee in the Plaintiff's chain of title was in Exhibit #19 which was notarized by an alleged robosignor who has been the subject of numerous controversy in other cases.  The Appointment of Substitute Trustee in question did not list the current law firm of Barrett Daffin but instead listed its predecessor, namely, Barrett Burke Wilson Castle Daffin and Frappier, LLP (hereinafter "Barrett-Burke").  Since the current law firm of Barrett-Daffin is not the same as Barrett-Burke, and since the assignments that were recorded in the land records were post-appointment recordations, the Plaintiff maintains that the appointment was invalid.  At the time Barrett Daffin's predecessor was named as Substitute Trustee, the entity claiming to own the Plaintiff's note and deed of trust did in fact, fail to assign the deed and note into the trust in a timely manner, which did not occur until AFTER the Appointment; thus, Barrett-Daffin acted without authority when it noticed the Plaintiff of its intent to foreclose and sell the Plaintiff's Property.

87.     To add to the slander of title and injury to the Plaintiff in the disparagement of her

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL                    Page 37**

Property, Defendant Barrett-Daffin, in consort with Defendant Bank of America, N.A., caused to be manufactured another Appointment of Substitute Trustee which was filed in the real property records of Collin County, Texas on August 23, 2013 (Exhibit 24), the particulars of which are previously referenced in Paragraphs 57 (a) and (b), supra.

88.     Thus, Defendant Barrett-Daffin not once but twice engaged in misleading and deceptive acts regarding its advisement to Plaintiff of her duties and obligations under the Note. Defendants further engaged in misleading and deceptive acts regarding their intent to foreclose on the Property and evict the Plaintiff.  By reason of Defendant Barrett-Daffin's fraudulent, deceptive, unfair, and other wrongful conduct, Defendants have violated the Texas Deceptive Trade Practices Act.

89.     Plaintiff justifiably relied on Defendants' deception, which was a producing cause of Plaintiff's damages.  Plaintiff is entitled to actual, exemplary and punitive damages for the Defendants' misleading and deceptive conduct in an amount within the jurisdictional limits of this court.

## X. FOURTH CAUSE OF ACTION
### FRAUDULENT CONCEALMENT OF MATERIAL FACTS AND VIOLATION OF TEXAS CIVIL PRACTICE AND REMEDIES CODE § 12.002 (AGAINST DEFENDANT JP MORGAN CHASE BANK, N.A AND BANK OF AMERICA, N.A. AND WELLS FARGO BANK, N.A.)

90.     Plaintiff re-alleges Paragraphs 1-77, 79-82, 84 and 86-89 as though fully set forth herein.

**(1) AS TO JPMORGAN CHASE BANK, N.A.**

91.     By and through the actions of the Defendant JPMorgan Chase Bank, N.A., in its misrepresentation of association with non-defendant Select Portfolio Servicing, Inc., MERSCORP member Chase caused to be initiated a public recordation entitled "Release of Lien" (Exhibit 18), that contained the signature and notarization of Chase's own employee,

namely, "G. Lathrop" and an acknowledgment by notary public "M. Munoz", who Chase supervisors knew were not employees or officers of SPS.

92.    Said Release of Lien (Exhibit 18) was filed for record in the office of the Collin County Clerk on February 8, 2005, which contained fraudulently concealed material facts, to wit:

(a) Chase initiated the manufacture and production of the document in question;

(b) Chase caused its employees to sign the document;

(c) The employee and the notary knew or should have known that they were not representatives of SPS;

(d) The document stated that SPS held a power of attorney when in fact, Chase knew that of the many Limited Powers of Attorney filed for record in Duval County, Florida real property records that, there was no power of attorney granted to SPS filed for record where it granted attorney-in-fact status to SPS to release the lien allegedly held by Truman Capital Mortgage Loan Trust 2004-2 Asset-Backed Certificates, Series 2004-2;

(e) Chase knew that the Plaintiff's note and deed of trust did not actually make the trust pool of loans because of non-compliance with the PSA; and

(f) Chase caused the document to be filed in the real property records of Collin County, Texas, with full knowledge of the concealed information, that if taken at face value, falsely served as constructive notice to the world, when Chase knew otherwise; all of the foregoing was conducted among Chase employees and supervisors to give the appearance of a Release of Lien when in fact, Chase nor the trust it claimed to be a trustee for legally owned the Plaintiff's deed and note.

93.    The Plaintiff contends and alleges that the actions of Chase in producing a

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 39**

document containing fraudulently concealed material misrepresentations and then causing the document to be filed in a public record is a violation of Texas Civil Practice and Remedies Code § 12.002 and the Plaintiff request that this Court award the Plaintiff the maximum amount of statutory damages allowed in addition to any other relief this Court deems just and proper.

**(2) AS TO BANK OF AMERICA, N.A. AND WELLS FARGO BANK, N.A.**

94.    By and through the actions of the Defendant Bank of America, N.A., in collaboration with defendant Wells Fargo Bank, N.A., MERSCORP member Bank of America, N.A., caused to be drafted an Appointment of Substitute Trustee and caused it to be filed for record in Collin County, Texas as Instrument #20070530000724950 (Exhibit 19), knowing full well that Wells Fargo as Trustee did not own the Plaintiff's note and deed of trust; and therefore, the Instrument (Exhibit 19) contained material misrepresentations, where, if taken as a legitimate appointment, would appear to have duly appointed Barrett-Daffin's predecessor for the purpose of foreclosing on the Plaintiff's Property.

95.    Said Appointment of Substitute Trustee (Exhibit 19) was filed for record in the office of the Collin County Clerk on May 30, 2007, which contained fraudulently concealed material facts, to wit:

(a) Bank of America, N.A. in conjunction with Defendant Barrett-Daffin, initiated the manufacture and production of the document in question;

(b) Bank of America, N.A., a MERSCORP member, caused its employees to sign and notarize the document;

(c) The employee and the notary knew or should have known that they were not representatives of Wells Fargo Bank, N.A. on behalf of Morgan Stanley ABS

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 40**

Capital I Inc. Trust 2005-WMC3;

(d) The document stated that Ely Harless was a Vice President of this entity,

when in fact, Harless, Bank of America, N.A. and Wells Fargo Bank, N.A. as

Trustee knew that Harless was not an officer of Wells Fargo Bank, N.A.;

(e)  Bank of America, N.A. also knew that the Plaintiff's note and deed of trust

did not actually make this trust pool of loans because of non-compliance with the

PSA; and

(f) Bank of America, N.A. caused the document to be filed in the real property

records of Collin County, Texas, with full knowledge of the concealed

information, that if taken at face value, falsely served as constructive notice to the

world, when Bank of America, N.A., Barrett-Daffin, Wells Fargo Bank, N.A. and

Harless knew otherwise; all of the foregoing was conducted among Bank of

America, N.A. employees and supervisors to give the appearance of a legitimate

appointment of Barrett-Daffin to act on behalf of the alleged claimant trust, when

in fact, it knew Wells Fargo Bank, N.A.'s trust did not have standing to foreclose

because no assignments had been filed at that time to indicate that Wells Fargo

Bank, N.A. owned the Plaintiff's deed of trust and note and thus had any such

authority to direct its alleged Servicer, Bank of America, N.A. to direct its

employees to appoint Barrett-Daffin as a substitute trustee.

96.     The Plaintiff contends and alleges that the actions of Bank of America, N.A.

(in conjunction with Barrett-Daffin and Wells Fargo Bank, N.A.) produced a document

containing fraudulently concealed material misrepresentations; and then caused the

document to be filed in a public record and relying on that self-manufactured document as fact,

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 41**

is a violation of Texas Civil Practice and Remedies Code § 12.002 and the Plaintiff request this Court to award the Plaintiff the maximum amount of statutory damages allowed in addition to any other relief this Court deems just and proper.

97.     By and through the actions of the Defendant Bank of America, N.A., in collusion with defendant Wells Fargo Bank, N.A., MERSCORP member Bank of America, N.A., caused to be drafted an Assignment of Deed of Trust and caused it to be filed for record in Collin County, Texas as Instrument #20120001623850 (Exhibit 20), knowing full well that the document contained material misrepresentations, where, if taken as a legitimate assignment, would appear to have legitimately conveyed the Plaintiff's first deed of trust into the trust entity known as Wells Fargo Bank, N.A. on behalf of Morgan Stanley ABS Capital I Inc. Trust 2005-WMC3.

98.     However, said assignment contained material misrepresentations which were obfuscated and concealed by Bank of America, N.A., through its supervisors and employees use of the MERS system, to wit:

> (a) Bank of America, N.A., the alleged Servicer, in collusion with Defendant Wells Fargo Bank, N.A. as Trustee, initiated the manufacture and production of the document in question by and through its employee, Diana DeAvila;
>
> (b) Bank of America, N.A., a MERSCORP member, directed its employee, Richard Paz, to sign the document as an Assistant Secretary of MERS as nominee for WMC Mortgage Corporation, when in fact, Bank of America, N.A. and its supervisors knew that Richard Paz was not an Assistant Secretary in his official capacity, for MERS or Bank of America, N.A.;

(c)  The Plaintiff alleges and believes that if Richard Paz has a signing agreement as a Certifying Officer with the system known as the "MERS® System", then his signing agreement is actually with MERSCORP, Inc. (now MERSCORP Holdings, Inc.) and NOT MERS;

(d)  MERSCORP (and MERS) have no control over Richard Paz's day-to-day activities as an employee of Bank of America, N.A. or one of its subsidiaries. In fact, Mr. Paz has more than likely never met any of the Board of Directors for MERSCORP, Inc. and has probably never taken their "required tests" as mandated by the MERSCORP Rules of Membership;

(e) Further, Bank of America, N.A. then directed its notary, "J. Mastrolonardo", a notary public in and for the State of California, under penalty of perjury, to notarize the document signed by Mr. Paz **in his authorized capacity**, which the Plaintiff contends and alleges is nothing more than a $10/hour employee who sits at a desk and signs over 300 documents a day without having personal knowledge of the contents therein;

(f) The Plaintiff further believes and alleges that Mr. Paz and the notary knew that Mr. Paz was not an Assistant Secretary for MERS;

(g) MERSCORP is not listed on the Plaintiff's first deed of trust and note; only MERS (identified as the "system") is listed; thus, the real agent in fact is not properly represented here, but rather is concealed behind an electronic wall of confusion maintained by Bank of America, N.A. and other MERSCORP members in conjunction with MERSCORP, Inc.;

(h) Further, the Plaintiff believes and alleges that had Mr. Paz had personal

knowledge of the facts that he was attesting to, he would have known that the conveyance into the trust was void because the assignment was initiated and executed on December 18, 2012, over seven (7) years too late to be accepted into the trust pool administered by Wells Fargo Bank, N.A. (as Trustee) on behalf of Morgan Stanley ABS Capital I Inc. Trust 2005-WMC3;

(i) The Plaintiff contends and alleges that, based on the PSA discussions in this Complaint, supra, the conveyance into the trust did NOT occur and thus, Wells Fargo Bank, N.A. Trustee of the trust does not OWN the Plaintiff's deed and note, and therefore has no standing to pursue a foreclosure against the Plaintiff's Property by and through its alleged Servicer, Bank of America, N.A.;

(j) Bank of America, N.A. also knew that the Plaintiff's note and deed of trust did not actually make this trust pool of loans because of non-compliance with the PSA; and

(k) Bank of America, N.A., through its alleged substitute trustee, was claiming that the Plaintiff's note was in default; therefore, Bank of America, N.A. knew it was instructing its employees to cause the assignment to be drafted to place the claimed non-performing note and deed of trust into an allegedly performing trust pool of loans, which Bank of America, N.A. knew it could not do because the trust closed on May 6, 2005 (Bank of America, N.A. had full knowledge of the closing date of the trust);

(l) Bank of America, N.A., by and through its agents, caused the document to be filed in the real property records of Collin County, Texas, with full knowledge of

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 44**

the concealed information, that if taken at face value, falsely served as

constructive notice to the world, when Bank of America, N.A., Barrett-Daffin,

and Wells Fargo Bank, N.A. knew otherwise;

(m) Instances such as this are what make up the bulk of the complaint lodged

against Bank of America, N.A. and MERSCORP Holdings, Inc. in the case in

Nueces County, Texas, known as *Nueces County, Texas v. MERSCORP Holdings,*

*Inc., Mortgage Electronic Registration Systems, Inc., and Bank of America, N.A.,*

Cause No. 2:12-CV-00131, U.S. Dist. Ct. S.D. Tex, wherein the Defendants'

motion to dismiss was granted in part and denied in part.

(n) In the *Nueces County* case, as the Plaintiff alleges here, the Court found:

"The object of recording statutes is to protect innocent purchasers and creditors
against prior interests in real property which were not properly recorded, so as
to prevent them from being injured or prejudiced by their lack of knowledge of
competing claims. *Noble Mortg. & Investments, LLC*, 340 S.W.3d at 79.  The
modern property recording system relies on voluntary recordation of liens and
other interests in public property records.  In exchange for recording their
interests, lienholders are granted priority status over subsequent purchasers or
lienholders.  Plaintiff alleges that Defendants have filed thousands of fraudulent
deed of trust naming MERS as the beneficiary in order to circumvent Texas
recording laws and establish a parallel recording system which purports to
provide the same protections as the county's recording system; that Defendants
MERS and MERCORP have been unjustly enriched by the recording fees they
have collected from their members; and that Bank of America, N.A. has been
unjustly enriched by avoiding the payment of filing fees to the County."

(o) Moreover, on Page 22 of the Court's Order, the issues complained herein

are held to the standards of TCPRC § 12.002, to wit:

"The Court additionally rejects Defendants' other arguments that there were no
false statements because the borrower agreed in the deeds of trust that MERS
was a beneficiary, and MERS holds a lien on the properties secured by the deeds
of trust.  These arguments directly conflict with the language of the deed of trust,
as well as Section 51.0001(1), which state that MERS serves solely as the
nominee for the secured party.  MERS is not a lienholder, grantee, secured party,

or beneficiary. According, the Court concludes that the FAC sets forth sufficient facts to give rise to a plausible inference that Defendants made false statements to the County regarding their rights under the deeds of trust and their relationships to the borrowers in the mortgages issued by MERS members."

Again, the Plaintiff herein alleges that MERS, when used in the MERSCORP

Rules of Membership, means MERSCORP;

99.     The Plaintiff contends and alleges that the actions of Bank of America, N.A. and its employees, in collusion with Barrett-Daffin and Wells Fargo Bank, N.A., produced this assignment which contained fraudulently concealed material misrepresentations; and then caused said assignment to be filed in the Collin County public records and relying on that self-manufactured document as fact, in an attempt to mislead a person reading the document to believe that Barrett-Daffin, is the substitute trustee and that Wells Fargo Bank, N.A. as Trustee indeed owned the Plaintiff's note and deed, when in fact, they knew otherwise, in violation of Texas Civil Practice and Remedies Code § 12.002. The Plaintiff therefore request this Court to award the maximum amount of statutory damages allowed in addition to any other relief this Court deems just and proper.

## (3) AS TO BANK OF AMERICA, N.A. AND WELLS FARGO BANK, N.A.

100.    By and through the actions of the Defendant Bank of America, N.A., in collusion with defendant Wells Fargo Bank, N.A., MERSCORP member Bank of America, N.A., caused to be drafted an Assignment of Deed of Trust and caused it to be filed for record in Collin County, Texas on December 20, 2012, as Instrument #20120001623920 (Exhibit 21), knowing full well that the document contained material misrepresentations, where, if taken as a legitimate assignment, would appear to have legitimately conveyed the Plaintiff's second deed of

trust into the trust entity known as Wells Fargo Bank, of Morgan Stanley ABS Capital I Inc. Trust 2005-WMC3.

101.    The said assignment (Exhibit 21), however, contained material misrepresentations which were obfuscated and concealed by the use of the MERS system, to wit:

(a) Bank of America, N.A., the alleged Servicer, in collusion with Defendant Wells Fargo Bank, N.A. as Trustee, initiated the manufacture and production of the document in question by and through its employee, Diana DeAvila;

(b) Bank of America, N.A., a MERSCORP member, directed its employee, Richard Paz, to sign the document as an Assistant Secretary of MERS as nominee for WMC Mortgage Corporation, when in fact, Bank of America, N.A. and its supervisors knew that Richard Paz was not an Assistant Secretary in his official capacity, for MERS or Bank of America, N.A.;

(c)  The Plaintiff alleges and believes that if Richard Paz has a signing agreement as a Certifying Officer with the system known as the "MERS® System", then his signing agreement is actually with MERSCORP, Inc. (now MERSCORP Holdings, Inc.) and NOT MERS;

(d)  MERSCORP (and MERS) have no control over Richard Paz's day-to-day activities as an employee of Bank of America, N.A. or one of its subsidiaries. In fact, Mr. Paz has more than likely never met any of the Board of Directors for MERSCORP, Inc. and has probably never taken their "required tests" as mandated by the MERSCORP Rules of Membership;

(e) Further, Bank of America, N.A. then directed its notary, "J. Mastrolonardo", a notary public in and for the State of California, under penalty of perjury, to

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 47**

notarize the document signed by Mr. Paz **in his authorized capacity**, which the

Plaintiff contends and alleges is nothing more than a $10/hour employee who sits

at a desk and signs over 300 documents a day without having personal knowledge

of the contents therein;

(f) The Plaintiff further believes and alleges that Mr. Paz and the notary knew

that Mr. Paz was not an Assistant Secretary for MERS but a common employee

for Bank of America, N.A., who directs the behaviors of both of these individuals;

(g) MERSCORP is not listed on the Plaintiff's first deed of trust and note; only

MERS (identified as the "system") is listed; thus, the real agent in fact is not

Properly represented, but rather is concealed behind an electronic wall of

confusion maintained by Bank of America, N.A. and other MERSCORP

members in conjunction with MERSCORP, Inc.;

(h) Further, the Plaintiff believes and alleges that had Mr. Paz had personal

knowledge of the facts that he was attesting to in his authorized capacity, he

would have known that the conveyance into the trust was void because the

assignment was initiated and executed on December 18, 2012, over seven (7)

years too late to be accepted into the trust pool administered by Wells Fargo

Bank, N.A. (as Trustee) on behalf of Morgan Stanley ABS Capital I Inc. Trust

2005-WMC3;

(i) The Plaintiff contends and alleges, based on the PSA discussions in this

Complaint, supra, that the conveyance into the trust did NOT occur and thus,

Wells Fargo Bank, N.A. as the Trustee who only administers the trust, does not

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                **Page 48**

OWN the Plaintiff's deed and note, and therefore has no standing to pursue a foreclosure against the Plaintiff's Property by and through its alleged Servicer, Bank of America, N.A.;

(j) Bank of America, N.A. also knew that the Plaintiff's note and deed of trust did not make this trust pool of loans because of non-compliance with the PSA; and

(k) Bank of America, N.A., through its alleged substitute trustee, was alleging that the Plaintiff's note was in default; thus, it knew it was instructing its employees to cause the assignment to be drafted to place the Plaintiff's non-performing note and deed of trust into an allegedly performing trust pool of loans, which Bank of America, N.A. knew it could not do because the closing date for the trust was May 6, 2005 and Bank of America, N.A. had full knowledge of that fact;

(l) Bank of America, N.A., by and through its agents, caused the document to be filed in the real property records of Collin County, Texas, with full knowledge of the concealed information, that if taken at face value, falsely served as constructive notice to the world, when Bank of America, N.A., Barrett-Daffin, Wells Fargo Bank, N.A. knew otherwise;

(m) Instances such as this are what make up the bulk of the complaint lodged against Bank of America, N.A. and MERSCORP Holdings, Inc. in the case in Nueces County, Texas, known as *Nueces County, Texas v. MERSCORP Holdings, Inc., Mortgage Electronic Registration Systems, Inc., and Bank of America, N.A.*, Cause No. 2:12-CV-00131, U.S. Dist. Ct. S.D. Tex, wherein the Defendants' motion to dismiss was granted in part and denied in part.

(n) In the *Nueces County* case, as the Plaintiff alleges herein, the Court found:

"The object of recording statutes is to protect innocent purchasers and creditors against prior interests in real property which were not properly recorded, so as to prevent them from being injured or prejudiced by their lack of knowledge of competing claims. *Noble Mortg. & Investments, LLC*, 340 S.W.3d at 79.  The modern property recording system relies on voluntary recordation of liens and other interests in public property records.  In exchange for recording their interests, lienholders are granted priority status over subsequent purchasers or lienholders.  Plaintiff alleges that Defendants have filed thousands of fraudulent deed of trust naming MERS as the beneficiary in order to circumvent Texas recording laws and establish a parallel recording system which purports to provide the same protections as the county's recording system; that Defendants MERS and MERCORP have been unjustly enriched by the recording fees they have collected from their members; and that Bank of America, N.A. has been unjustly enriched by avoiding the payment of filing fees to the County."

(o.) Moreover, on Page 22 of the Court's Order, the issues complained herein

are held to the standards of TCPRC § 12.002, to wit:

"The Court additionally rejects Defendants' other arguments that there were no false statements because the borrower agreed in the deeds of trust that MERS was a beneficiary, and MERS holds a lien on the properties secured by the deeds of trust.  These arguments directly conflict with the language of the deed of trust, as well as Section 51.0001(1), which state that MERS serves solely as the nominee for the secured party.  MERS is not a lienholder, grantee, secured party, or beneficiary.  According, the Court concludes that the FAC sets forth sufficient facts to give rise to a plausible inference that Defendants made false statements to the County regarding their rights under the deeds of trust and their relationships to the borrowers in the mortgages issued by MERS members."

Again, the Plaintiff herein alleges that MERS, when used in the MERSCORP

Rules of Membership, means MERSCORP;

102.    The Plaintiff contends and alleges that the actions of Bank of America, N.A.

(in collusion with Barrett-Daffin and Wells Fargo Bank, N.A.) produced this assignment which

contained fraudulently concealed material misrepresentations; and then caused said assignment

to be filed in the Collin County public records, in an attempt to mislead a person reading the

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 50**

document into believing that Barrett-Daffin (acting as alleged substitute trustee for Servicer Bank of America, N.A.) has full authority to foreclose and sell the Plaintiff's Property; in violation of Texas Civil Practice and Remedies Code § 12.002. The Plaintiff therefore request this Court to award the Plaintiff the maximum amount of statutory damages allowed in addition to any other relief this Court deems just and proper.

## XI. FIFTH CAUSE OF ACTION
## VIOLATION OF TEXAS PROPERTY CODE
## (AGAINST DEFENDANT BARRETT-DAFFIN)

103.    Plaintiff re-alleges Paragraphs 1-87 as though fully set forth herein.

104.    The Plaintiff claims that Bank of America, N.A. does not own the note and does not (as Servicer) have the right to enforce the note; that the trust did not receive either of the notes because they were conveyed into the trust pool over seven (7) years too late as well as under fraudulent circumstances; thus, Bank of America, N.A. had no legal authority to appoint Barrett-Daffin or its predecessor as the substitute trustee; thus rendering the actions of Barrett-Daffin *ultra vires.*

105.    Further, the most recent Appointment of Substitute Trustee was filed for record in the real property records in the office of the Collin County Clerk on August 23, 2013 at 10:01:50 a.m. (Exhibit 24); thus, giving constructive notice to the world of the alleged official appointment of the substitute trustee. Despite the backdating of the appointment to August 9, 2013 in an attempt to "pre-date" the Notice of Substitute Trustee Sale filed in the real property records in the office of the Collin County Clerk on August 12, 2013 at 2:49 p.m. with the intent to give the latter filing authority to act, the Plaintiff maintains and alleges that:

(a) the notice she received contained a notice of acceleration dated August 8,

2013 on Barrett-Daffin letterhead, sent certified mail, with a notice to the Clerk

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL          Page 51**

of the sale of her Property file stamped August 12, 2013.  When Barrett-Daffin

sent that letter it was not officially appointed. Barrett-Daffin was not officially

appointed until the filing of the Appointment on August 23, 2013 (Exhibit 23);

thus, the Plaintiff maintains and alleges that Barrett-Daffin was required to send a

new notice, or start the 21-day notice "clock", on August 23, 2013 as mandated

by Texas Property Code § 51.001(b) and existing case law, to wit:

A Notice of Foreclosure Sale must be posted at the courthouse, filed and served
**at least 21 days prior to the foreclosure sale**. This notice must be (1) posted at
the courthouse (2) **filed with the county clerk**, and (3) served by certified mail to
each person on the deed of trust. *Tex. Prop. Code Ann. § 51.002(b)*.

If the foreclosing party wishes to use a Trustee other than a Trustee named
in the Deed of Trust, a notice of Substitute Trustee must be filed 21 days prior
to the foreclosure sale. *Michael v. Crawford*, 108 Tex. 352, 193 S.W. 1070
(1917).

(b) Constructive notice is recorded in the real property records of Collin County,

Texas.  In this instance, Barrett-Daffin did not become the official Substitute

Trustee until August 23, 2013 (Exhibit 24); thus, the sale date of September 3,

2013 is in violation of the Texas Property Code.

106.    The Plaintiff therefore request this Court to award the Plaintiff the maximum

amount of statutory and punitive damages allowed in addition to any other relief this

Court deems just and proper.

## XII. SIXTH CAUSE OF ACTION
## INVASION OF PRIVACY
## (AGAINST MERSCORP AND MERS)

107.    Plaintiff re-alleges Paragraphs 1-87 as though fully set forth herein.

108.    The Plaintiff maintains and alleges that the MERS® System is controlled by

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**          **Page 52**

members of MERSCORP. MERSCORP members upload the notes into the MERS electronic database where they are converted into electronic data files that become part of the MERS eRegistry.  Borrowers are not informed of what happens to their paperwork when they sign their mortgages or deeds of trust. Plaintiff believes and contends that the borrower's promissory notes are shredded after being scanned into eFiles, which is one of the key reasons why the borrowers have such a hard time obtaining a wet ink signature original of their promissory notes.

109.    Neither the Plaintiff's deed of trust or promissory note contain any terms that allow MERS or MERSCORP to destroy her original promissory notes or deed of trust or to possess her personal identifying information (hereinafter "PII").

110.    The Plaintiff contends and alleges that in order to access information from the MERSCORP website as to who an "investor" in a note maybe (which is a misnomer because the investor listed is not the real owner or "boss of the note"), the person or entity seeking the information must input the borrower's last name and social security number.

111.    The Plaintiff contends and alleges that MERSCORP/MERS has been using her personal identifying information (PII) without her consent. The Plaintiff did not give them MERSCORP or MERS permission to obtain it or utilize it for their own commercial use, gain and/or benefit.

112.    The Plaintiff contends and alleges that she has a common law right to privacy under Texas law. *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex.1973). Further, the Texas Constitution guarantees the sanctity of the home and person from unreasonable intrusion. *Texas State Employees Union v. Texas Department of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex.1987).

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    Page 53

113.    The elements of invasion of privacy by misappropriation are: (1) The defendant appropriated the plaintiff's name or likeness (e.g., SSN) for the value associated with it; (2) The plaintiff can be identified from the publication; and (3) There was some advantage or benefit to the defendant from the use of the name or likeness. *Express One International, Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex.App.-Dallas 2001, no pet.).

114.    Liability for such an invasion of privacy will arise if the defendant appropriates, for its own benefit, the commercial standing, reputation, or any other value associated with the plaintiff's name or likeness. *Express One*, supra. Generally, an appropriation becomes actionable when the name or likeness is used "to advertise the defendant's business or product, or for some similar commercial purpose." *Express One*, supra.

115.    The American Law Institute, Restatement of the Law of Torts, 2d, Section 652C (a) and (b), states:

> a. The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man [i.e., person].

> b. The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability,

even though there is no publication or other use of any kind
of the photograph or information outlined.

116.   Section 652C further states (emphasis supplied):

**One who appropriates to his own use or benefit the name or
likeness of another is subject to liability to the other for invasion
of his privacy.**

a.  **The interest protected by the rule stated in this Section is
the interest of the individual in the exclusive use of his own
identity**, in so far as it is represented by his name
or likeness, and in so far as the use may be of benefit
to him or to others. Although the protection of his
personal feelings against mental distress is an important
factor leading to a recognition of the rule, the right created
by it is in the nature of a property right, for the exercise
of which an exclusive license may be given to a third person,
which will entitle the licensee to maintain an action to protect it.

b. How invaded.  The common form of invasion of privacy
under the rule here stated is the appropriation and use of
the plaintiff's name or likeness to advertise the defendant's
business or product, **or for some similar commercial purpose**.
Apart from statute, however, the rule stated is not
limited to commercial appropriation. It applies also when the
defendant makes use of the plaintiff's name or likeness for
his own purposes and benefit, even though the use is not a
commercial one, and even though the benefit sought to
be obtained is not a pecuniary one. Statutes in some states
have, however, limited the liability to commercial uses of
the name or likeness.

117.   The Plaintiff contends and alleges that MERSCORP operates a for-profit

commercial business; that it charges a fee of $6.95 each time a person logs into the system;  that

MERSCORP makes almost $3-billion annually; that it stores all of the data given to it by its

members and makes money when the members and others log into and use the system; that it has

managed to obtain borrowers' personal identifying information (PII) (including the Plaintiff's

without her consent, namely, her name and social security number).

**PLAINTIFF'S ORIGINAL PETITION AND
APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION
REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                **Page 55**

118.    The Plaintiff claims that she is offended by MERSCORP's ability to obtain and make a profit from the unauthorized use of the Plaintiff's PII. The Plaintiff asserts that MERSCORP, through the use and application of its MERS® System, derives a commercial benefit from the Plaintiff's personal information against the Plaintiff's wishes, has invaded her privacy, and has allowed MERSCORP members to access her PII.

119.    The Plaintiff therefore request this Court to determine the extent to which MERSCORP, and the MERS® System, has violated her privacy and award her compensatory and punitive damages and other relief the Court shall deem just and proper.

### XIII. SEVENTH CAUSE OF ACTION
### INJUNCTIVE RELIEF
### (Against All Defendants)

120.    Plaintiff re-alleges paragraphs 1-119 as though fully set forth herein.

121.    Each of the Defendants have engaged in a course of conduct that has resulted in numerous clouds on the title to the Plaintiff's Property at 7113 Stoneridge Drive, Frisco, Texas 75034; they have attempted a number of improper conveyances to third parties that do not have a legitimate lien interest in the Property.

122.    The Plaintiff believes and alleges that her Property is the subject of a illegitimate foreclosure proceeding by entities that have no interest in her Property; Property which she has expended thousands of dollars upgrading for her own use and quiet enjoyment.

123.    If injunctive relief in the form of a restraining order and injunction do not issue, the Plaintiff will suffer actual and substantial injury of the loss of her property to a party or parties not entitled under any legal theory to any rights in the property.

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                    **Page 56**

124.    When the Plaintiff's chain of title is affected, there can be no summary dismissal or judgment rendered against her, if the petition "sets forth with sufficient clearness the facts constituting the cause of action, which facts, if true, would entitle Plaintiff to relief. *Titus v. Tolle* 223 S.W. 885 (1920).

125.    Therefore, the Plaintiff request a temporary and after trial a permanent injunction requiring the defendants, and any person or entity acting in concert with them, including but not limited to their attorneys, agents, servants, servicers, employees, successors, heirs, and assigns, to immediately desist and refrain from entering and taking possession of the Plaintiff's Homestead Property; or otherwise interfering with the Plaintiff's right to the quiet enjoyment and use of the Property; or proceeding with or attempting to sell or foreclose upon the Property; or attempting to purchase, assign, transfer, sell or collect on any note or deed of trust pertaining to the Property.

## XIV.   REQUEST FOR TRIAL BY JURY

126.    Plaintiff hereby requests a trial by jury.

## XV. APPLICATION FOR TEMPORARY RESTRAINING ORDER

127.    Unless this Court immediately restrains the Defendants, their employees, agents, trustees, and substitute trustees from foreclosing on the Property on Tuesday, September 3, 2013, or at any other time, pending a hearing on Plaintiff's application for temporary injunction, the Defendants will foreclose on and sell the Property before a hearing may be had on the matter. Unless the Defendants are immediately restrained from foreclosing on and selling the Property, the Plaintiff will suffer immediate and irreparable injury for which there is no adequate remedy at law to give her full, complete and final relief. More specifically, (a) the harm to Plaintiff is imminent because Plaintiff will lose her Homestead Property; (b) due to the unique character of

real property, there is no adequate remedy at law that will give Plaintiff complete, final and equal relief if the Temporary Restraining Order is not granted; (c) Plaintiff is willing to post a reasonable bond and hereby request this Court to set such bond at a reasonable amount under the circumstances; and (d) Plaintiff has met the burden by establishing each element that must be present before injunctive relief can be granted by this Court; therefore, Plaintiff is entitled to the Temporary Restraining Order.

128.   Plaintiff, therefore pursuant to Rule 680 of the Texas Rules of Civil Procedure, respectfully request this Court to immediately restrain the Defendants, their employees, agents, trustees, and substitute trustees from foreclosing on and selling the Property on or about Tuesday, September 3, 2013, or at any time thereafter pending a hearing on Plaintiffs' application for temporary injunction. Plaintiff has shown that she is likely to succeed on the merits of this lawsuit.

### XVI.  PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays (a) that this Petition be filed and that a date be set for a hearing on this matter; (b) that notice of the filing of this Petition and the hearing date be given to all parties; (c) that a Temporary Restraining Order issue, immediately restraining the Defendants, their employees, agents, trustees, and substitute trustees from foreclosing on the Property on Tuesday, September 3, 2013, or at any time pending a hearing on the Plaintiff's application for temporary injunction; (d) that the Court set a reasonable bond for the Temporary Restraining Order; (e) that, after notice and hearing, any and all attempts to foreclose on the Property be enjoined and a Temporary Injunction issue preventing and enjoining the Defendants, their employees, agents, trustees, and

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**                  **Page 58**

substitute trustees from foreclosing on the Property, or in any way interfering with the Plaintiff's

right to the quiet enjoyment and use of the Property; (f) that Plaintiff obtain clear quiet title to the

Property in her name; (g) that Plaintiff be awarded a judgment against the Defendants, jointly

and severally, for damages; (h) that Plaintiff be awarded her reasonable and necessary attorneys'

fees, expenses, and costs of court, incurred herein; and (i) that all relief to which Plaintiff is

justly entitled, in law and equity, be granted.

> Respectfully submitted,
>
> _____
> Carl D. Hughes, Jr.
> State Bar No. 10209000
>
> CARL HUGHES, P.C.
> P. O. Box 610326
> Dallas, Texas 75261
> Telephone: (214) 761-9342
> Facsimile: (888) 247-1127
>
> ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on September 3, 2013, he attempted to confer with

an attorney for Barrett-Daffin but was unable to do so prior to the filing of this pleading. The

undersigned has been unable to confer with any other opposing counsel since the Plaintiff as well

as the undersigned do not know who the opposing counsel would be, therefore the undersigned

reports that any opposing counsel will oppose Plaintiff's Emergency Application for Temporary

Injunction and Application for Temporary Restraining Order.

> _____
> Carl D. Hughes, Jr.

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**          Page 59

## VERIFICATION AFFIDAVIT

STATE OF TEXAS            )
                                     )
COUNTY OF COLLIN         )

         BEFORE ME, the undersigned Notary Public, on this day personally appeared Leslie C. Lassberg a/k/a Clare Lassberg, who being by me duly sworn, stated under oath: (1) that she is the Plaintiff in the foregoing cause of action; (2) that she is over 18 years of age, of sound mind, and capable of making this affidavit; (3) that she has read the foregoing Plaintiff's Original Petition and Application for an Emergency Temporary Injunction, Request for Disclosure and Demand for Jury Trial; (4) that every statement contained therein is within her personal knowledge and is true and correct; (5) that the Defendants have scheduled an unlawful foreclosure sale of her real property located at 7113 Stoneridge Drive, Frisco, Texas 75034; (6) that the foreclosure sale of her real property is scheduled for September 3, 2013; (7) that the Defendants attempting to foreclosure are not, and have not been authorized by, the actual owner of the deeds and notes concerning her real property; (8) that the Defendants attempting to act as substitute trustee for the foreclosure filed their appointment of trustee with the Collin County Clerk less that 21 days prior to the scheduled foreclosure sale; (9) that she is seeking the issuance of an Emergency Temporary Injunction to maintain the status quo until the actual owner of the deeds and notes concerning her real property may be determined by the Court; (10) that she will suffer irreparable injury if a Temporary Injunction is not issued because she would lose her homestead, would be evicted, and her home would be sold to another, forever preventing that unique property from being transferred back to her, for which injury she will have no adequate remedy at law; (11) that there is a substantial likelihood that she will prevail on the merits for the reasons set forth in her petition; (12) that the harm faced by her outweighs the harm that would be sustained by the Defendants if the Temporary Injunction were granted; (13) that ownership issues exist with the title to her property which issues are pending before the court in her quiet title request; (14) that she does not have a large amount of money, but would be able to cover a bond in the amount of One Thousand Dollars ($1,000.00) for the issuance of the Temporary Injunction.

                                 _Leslie C. Lassberg_
                                 Leslie C. Lassberg

         SWORN TO and SUBSCRIBED before me this the __3__ day of September, 2013.

                                   _Milton F. Lacefield_

**MILTON J. LACEFIELD**
Notary Public, State of Texas
My Commission Expires
**July 25, 2015**

                                 Notary Public in and for the State of Texas

**PLAINTIFF'S ORIGINAL PETITION AND**
**APPLICATION FOR AN EMERGENCY TEMPORARY INJUNCTION**
**REQUEST FOR DISCLOSURE AND DEMAND FOR JURY TRIAL**          **Page 60**

CAUSE No. 429-03494-2013

| | | |
|---|---|---|
| LESLIE C. LASSBERG<br>a/k/a CLARE LASSBERG, | § <br> § <br> § | IN THE DISTRICT COURT |
| Plaintiff, | § <br> § <br> § | |
| vs | § <br> § | |
| BARRETT DAFFIN FRAPPIER TURNER &<br>ENGEL, L.L.P., in its capacity as an agent and<br>alleged Substitute Trustee for BANK OF<br>AMERICA, N.A., as successor by merger to<br>BAC HOME LOANS SERVICING, LP, in its<br>capacity as agent and servicer for | § <br> § <br> § <br> § <br> § <br> § | 429TH JUDICIAL DISTRICT |
| WELLS FARGO BANK, N.A., as trustee for the<br>Certificate holders of MORGAN STANLEY<br>ABS CAPITAL 1 INC. TRUST 2005-WMC3,<br>MORTGAGE PASS-THROUGH<br>CERTIFICATES, SERIES 2005-WMC3;<br>STONEBROOK ESTATES HOMEOWNERS<br>ASSOCIATION, INC.; CHARLES A. WARD;<br>MERSCORP HOLDINGS, INC.; MORTGAGE<br>ELECTRONIC REGISTRATION SYSTEMS,<br>INC. ("MERS"), as nominee for<br>WMC MORTGAGE CORPORATION and its<br>Successors and Assigns; and the Successors and<br>Assigns of MERS; | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |
| JPMORGAN CHASE BANK, N.A., as trustee<br>on behalf of the Holders of the TRUMAN<br>CAPITAL MORTGAGE LOAN TRUST 2004-2;<br>JPMORGAN CHASE BANK, N.A. F/K/A<br>CHASE MANHATTAN BANK, as Trustee of<br>IMC HOME EQUITY LOAN TRUST 1997-6<br>UNDER THE POOLING AND SERVICING<br>AGREEMENT DATED AS OF OCTOBER 1,<br>1997; JOHN & JANE DOES 1-50, TRUSTS 1-<br>50, CORPORATIONS 1-50, as unknown<br>Claimants of 7113 STONERIDGE DRIVE,<br>FRISCO, TEXAS 75034, | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | COLLIN COUNTY, TEXAS |
| Defendants-Claimants | § | |

## NOTICE OF HEARING

Please Take Notice that the Emergency Temporary Injunction (Temporary
Restraining Order) signed and entered herein on September 3, 2013 continues and
remains in full force and effect, by agreement of the parties on the record in open court
on September 17, 2013; pending a hearing on the Plaintiff's Application for an
Emergency Temporary Injunction. Plaintiff's Application for an Emergency Temporary
Injunction will be heard on the 11th day of October 2013, at 10:30 a.m. The hearing will
be held in the 429th Judicial District Court, located at 2100 Bloomdale Road, McKinney,
Texas.

Respectfully submitted,

Carl D. Hughes, Jr.
State Bar No. 10209000

CARL HUGHES, P.C.
P. O. Box 610326
Dallas, Texas 75261
Telephone: (214) 761-9342
carlhughespc@aol.com
Facsimile: (888) 247-1127

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing document has been served in accordance with Rule 21a of the Texas Rules of Civil Procedure on September 26, 2013, as follows:

Carl D. Hughes, Jr.

cc:    Matthew W. Lindsey, Esq.
       Maris & Lanier, P.C.
       3710 Rawlins Street, Suite 1550
       Dallas, Texas 75219
       mlindsey@marislanier.com
       (214) 706-0920
       Via Facsimile No. 214-706-0921

       David C. Romness, Esq.
       McGlinchey Stafford, PLLC
       2711 North Haskell Ave., Suite 2750, LB 38
       Dallas, Texas 75204
       dromness@mcglinchey.com
       (214) 445-2445
       Via Facsimile No. 214-722-1584

       Robert M. Blend, Esq.
       The Blend Law Firm, P.C.
       14131 Midway Road, Suite 1240
       Addison, Texas 75001
       (972) 233-1900
       Via Facsimile No. 972-233-1910

       Darryl Smith, Bailiff
       429th Judicial District Court
       2100 Bloomdale Road
       McKinney, Texas 75071
       dsmith@co.collin.tx.us
       (972) 747-5721
       Via Facsimile No. 972-547-5727